CLARK, C. J., dissenting.
The action is to recover damages for physical injuries caused by alleged negligence of defendant company in not properly safeguarding its machinery and in permitting plaintiff, a child twelve years of age, or little over, to go about same whereby he was caught in the cogs of certain portions of the machinery and received painful and permanent injuries to plaintiff's great damage. There was denial of liability by defendant and on issues submitted, the jury rendered a verdict for plaintiff assessing his damages. Judgment on verdict and defendant company excepted and appealed. *Page 613 
On careful consideration, we are of opinion that no liability has been established against defendant company, and the motion for nonsuit should have been sustained. There was evidence tending to show that in March, 1918, plaintiff, a bright boy, then about 12 years of age, had his arm caught in the cog-wheels of an edging machine in the lumber mill of the defendant company and had it crushed so that it had to be amputated, that this machine was in the shape of a long table, on which there was a carriage propelled by a gearing of cogwheels at the side of the table and on this carriage the lumber was moved forward through the machine, cutting off the edges as the term imports. The foreman usually stands at the front, feeding the machine or guiding the lumber as it goes through, and at the other end an other man or boy with the duty of tailing the edger, and when the lumber has passed through it goes on to the trimmer table, about 20 feet beyond, and the edgings are thrown into the hog or off to the side of the machine so as to keep the same clear. That the machine in question was a standard machine in good order and the cogwheels which moved the carriage were covered by metallic hoods going two-thirds of the way down in the usual manner of such coverings and affording ample protection to any employee engaged in operating the machine or working about it, and the only way to get caught, as stated by several witnesses, was to "come up under it." There was also full testimony on the part of the defendant that by the rules of the company and its managers children were forbidden to come within the mill, notices to that effect being placed generally about in the mill in places likely to give warning, and they were never allowed in the mill except when they slipped in. That on the occasion in question, Corliss Rishell being the edger or foreman in charge of the machine, and Joe Rishell, an ordinary laborer, about 16 or 17 years of age, acting as tailer, the plaintiff was sent by his father to the mill to get some of the edging for the purpose of doing repairing about his lot, and which were to be obtained on the outside of the mill where they were usually placed when sold or given away, and both father and son testified that the father had instructed the plaintiff on no account to go in the mill for the edgings. And speaking to the fact of plaintiff being in the mill and about the machine at the time, Corliss Rishell, the foreman as stated, but now in the employment of others in the State of Pennsylvania, testified as follows: "In March or April, 1913, this boy, Earl Butner, came to Brown Brothers' sawmill at Eskota where I was working. He came after some edgings. I told him particularly and emphatically not to come in the mill while it was being operated. There was no *Page 614 
room for him there. He was in the way. I told this boy, plainly and emphatically, and he knew what I said and understood me, that he was not allowed on the mill, and should not be there while the mill was running. He obeyed my orders at first for a period of about ten minutes. Then when I was away from my regular place for a few minutes, he came back in and went in under a string of live rolls and got his arm hurt. The first thing I knew of this was that I heard him holler. I thought at first that his coat was caught, and I went over to see if I could help him out. We then discovered the accident and had him relieved as quick as possible. The boy could not possibly have gotten injured in the cog gears if he had been standing up. These cog gears were protected by metal coverings. The boy got down under them in violation of the instructions that I had given him." This testimony, however, was denied by the plaintiff, who after saying that his father had told him not to go in the mill, testified that he went in on the invitation of Joe Rishell, the tailer. The circumstances more directly revelant being given in his own language as follows: "The day I lost my arm I went in to get some strips at the edger machine where Joe Rishell was working; he was between 16 and 17 years old. I was going down the road and Joe Rishell came to the door of the mill and motioned for me to come up and I could not hear what he said for the mill was going. He told me to go in and get the strips out, that he was busy and could not help me turn but would help after a while if he got time, and I went in there. The way I went the edger was 50 feet from the door. I know where the edger machine was for I had been in there before; I do not know that I had ever seen Joe Rishell at the edger machine before but I had seen other men there. The edger was running and to get the strips I had to go in between the roller bed and the hog. Joe Rishell told me to go in there and get them, and I went in there and threw out 8 or 10 strips and went to pull out another one and it hung, and I jerked at it and my arm came back and caught in the cogs and ground it off." From this the testimony chiefly relevant and controlling as we view the case, it appears that the machine, a standard one, was in good shape, that the cogwheels were covered two-third of the way down the usual way and affording protection to the employees called on to operate or work about it in the course of their employment, that the plaintiff, at the time, was in the mill against the will of the owners or of any employee who had authority or duties give him a position of any significance and certainly without their knowledge or consent. The boy himself testifying that he didn't see any of the owners or Corliss Rishell, the foreman, that morning, and under such conditions, if responsibility for the injury could be fixed upon the defendant at all, it must be by reason of the invitation or direction of Joe Rishell, the laborer, for the plaintiff to come in and get the edgings for himself. Joe Rishell, as *Page 615 
shown, was a lad 16 or 17 years old, an ordinary laborer in the mill who had a definite task given him to do — that is to keep the machines clear of lumber passing through and the edgings that were cut from it. So far as appears, he had no authority to invite anyone into the mill contrary to the rules of the company, nor did he have any right to dispose of these edgings to outsiders, and in such case our decisions are to the effect that liability may not be imputed to the owners and proprietors by reason of his speech or conduct on this occasion, the same being entirely outside of the course and scope of his employment. In Dover, Admr., 157 N.C. p. 324, a lad 10 years of age was invited or permitted by the driver of a team, an employee, to ride with him. In a runaway the boy was killed and recovery against the owner of the team was denied. The decision being as follows: "The master is not responsible for the negligent acts of the servant employed for the ordinary duty of driving a team of mules hitched to a wagon for the purpose of hauling lumber, in causing an injury to one whom, in the absence of the master and without his knowledge, express or implied, he had permitted to ride on the wagon loaded with lumber; for such acts are beyond the scope of the servant's employment, and not done in furtherance of the duties owed by the servant to the master." A similar application of the principle had been previously made in Marlowe v. Bland, 154 N.C. 140, where the proprietor directed a hired man to cut and pile the corn stalks in a field on his farm, and having given this specific direction, went off with a load of lumber, the employee having cut and piled the stalks as directed, concluded he would burn them, and the wind rising, the sparks were carried to a nearby woods of another owner, setting the same on fire and doing considerable damage. Here, too, the liability on the part of the employer was denied, the court in the opinion saying in part: "As a general proposition, the duty of a hired man is to do what he is told, and in this instance he was directed to do a definite, specific thing, importing no menace to any one, and after completing the work that was given him to do, he goes on of his own motion and does something else, engages in an act which is not infrequently a source of danger to neighbors, and does it under circumstances amounting to a negligent wrong and causing substantial pecuniary injury"; and the decision denying recovery was stated as follows: "When the master has given direction to his servant, a `hired man,' to cut and pile cornstalks in his field, which was done by the servant, and then, without direction from the master, and in his absence, he set fire to the stalks, which caused sparks to be carried by the wind, which set fire to and destroyed plaintiff's property, the doctrine of respondeat superior
does not apply, the thing the master ordered his servant to do being harmless in itself, and there being no express or implied authority given the servant to burn the stalks, which alone caused the damage complained of." Similar rulings has been *Page 616 
made in many other cases with us on the subject, and the authorities elsewhere are in very general support of this position. Sawyer v. R. R.,142 N.C. 1; Vassor v. R. R., 142 N.C. 68; Daniel v. R. R., 136 N.C. 517;Howe v. Newmarch, 94 Mass. 559; Stone v. Pugh, 115 Tenn. 688; Schulwitzv. Lumber Co., 126 Mich. 559; Kiernan v. Ice Co., 74 N.J. L., 175; Wood on Master and Servant, sec. 279; 26 Cyc., pp. 1528-1533. We are not unmindful of evidence on the part of the plaintiff tending to show that children were often seen playing in defendant's mill, and that one witness testified that he had seen children `getting out strips just where Earl got hurt.' So far as playing in the mill is concerned, there was no evidence that they ever played in this particular locality, which was somewhat inaccessible, being protected by the placing of the machines and, furthermore, and as a complete answer to any such position, the plaintiff was not injured while he was playing, but on his own testimony, says he was in there at work on the invitation of Joe Rishell. And as to the testimony of children being seen there getting out strips, the custom was shown to be for the strips, or edgings, to be thrown on the outside and the statement of the exception referred to is entirely too indefinite and infrequent to fix the employer with knowledge that their customs and rules were being departed from and violated, in the present instance, and even if the cogs should have been more completely covered in the performance of defendant's duty towards its employees, as suggested further for plaintiff, such a duty would not arise to plaintiff, who was in the mill at the time contrary to the rules and without the knowledge of the owners, and against his father's instructions, working about the machine, on the invitation of a laborer who had no right to give it, and whose position and duties, as we have endeavored to show, were not such as to render his employer in any way liable for his acts on the facts as presented.
This will be certified that the judgment and verdict be set aside and the cause dismissed as on the motion of nonsuit.
Reversed.