ATLANTIC COAST LINE RAILROAD CO. v. SEARSON

(135 S. E., 567)

1. RAILROADS.—Where railroad charter gave right of way of 100 feet on each side from center, it will be presumed that right of way extends to such limits, in absence of written agreement.

2. TRIAL.—Verdict should be directed, where evidence is not sufficient to warrant reasonable jury in basing verdict thereon.

3. Adverse Possession.—Railroad right of way having been acquired for public purpose, cannot be lost by prescriptive use or adverse possession, unless by erection of permanent structure, accompanied by notice of adverse claim.

4. Adverse Possession.—Adverse possession is an affirmative defense.

5. Adverse Possession.—"Adverse possession" must be open, notorious, exclusive, hostile, continuous, and unbroken for the whole period.

6. Adverse Possession.—Where testimony as to adverse possession is susceptible of but one inference, question is one of law for Court.

7. Adverse Possession.—Successive possessions for less than statutory period cannot be tacked, unless by descent cast.

8. Adverse Possession.—Occasional or temporary use or occupation does not constitute adverse possession.

9. Adverse Possession.—Cultivation of railroad right of way even up under trestle does not constitute adverse use, since claimant might use land for any purpose not inconsistent with railroad's use.

10. Adverse Possession.—Acts of landowner constituting adverse possession within 10-year period preceding action to enjoin encroachment on railroad right of way are of no effect.

11. Adverse Possession.—Railroad's care in not throwing timbers in rice field on right of way being cultivated by landowner *held* not to show adverse possession of owner.

12. Adverse Possession.—Railroad's negotiations about making fill where trestle was in consideration of rights of one owning land on both sides of right of way *held* not to show adverse possession of right of way by owner.

13. Adverse Possession.—That railroad did not take dirt for fill from land of former owner does not show adverse possession by owner of right of way.

14. Evidence.—Map more than 30 years old, in Court's discretion, is admissible as ancient document.

15. Evidence.—Map of railroad right of way, with notations, testified to by surveyor as result of his own work, constitutes a "muniment of title."

16. Evidence.—In railroad's action to enjoin encroachment on right of way, evidence that defendant's predecessors made no complaint as to right of way *held* admissible, in Court's discretion, as being merely negative.

17. Evidence.—In railroad's action to enjoin encroachment on right of way, testimony of statements by defendant's predecessor as to written contract with railroad *held* inadmissible as self-serving declaration.

18. EVIDENCE.—In railroad's action to enjoin encroachment on right of way, statements of railroad employee that other employees had said they could not get dirt from defendant's land *held* inadmissible for indefiniteness.

19. EVIDENCE.—In railroad's action to enjoin encroachment on right of way, testimony as to stopping of trains in front of home of defendant's predecessor in attempt to prove contract in writing *held* properly excluded.

20. EVIDENCE.—Relevancy of testimony is in discretion of trial Judge.

21. EVIDENCE.—In order to prove contents of lost document, after showing the preliminaries, some one who knows contents must testify to them.

22. EVIDENCE.—Statements of section foreman as to width of right of way *held* inadmissible, in railroad's action to enjoin encroachment, in absence of showing of authority to bind railroad by such statements.

23. RAILROADS.—In railroad's action to enjoin encroachment on right of way, evidence as to width of right of way through adjoining tract of land *held inadmissible*.

24. EVIDENCE.—Letter in nature of offer of compromise by attorney for railroad *held* properly excluded, in railroad's action to enjoin encroachment on right of way.

Before HENRY, J., Colleton, Fall Term, 1923.   Affirmed.

Action by the Atlantic Coast Line Railroad Company against A. Z. Searson. Judgment for plaintiff and defendant appeals.

The pleadings and exceptions directed to be reported are as follows:

## COMPLAINT

The plaintiff above named, complaining of the above-named defendant, alleges:

(1) That the plaintiff is a corporation chartered and organized under the laws of the state of Virginia.

(2) That the complainant, Atlantic Coast Line Railroad Company, by virtue of the charters granted by the state of South Carolina to its predecessors in title, conveyances, consolidation agreements, and mergers, is the owner of the railroad and the right of way upon which the same is constructed, hereinafter referred to and formerly known as the

Charleston & Savannah Railroad, together with 100 feet on each side of the center of said road and said railroad adjoins the property of the defendant, Allen Searson, near the station of Ashepoo in the County of Colleton, S. C.

(3) That by Act of the Legislature of South Carolina passed December 20, 1853 (12 St. S. C., 271) the Charleston & Savannah Railroad Company was chartered for the construction and operation of a railroad from the city of Charleston, S. C., to the city of Savannah in the State of Georgia.

(4) That under authority of that act the said Charleston & Savannah Railroad Company constructed said railroad and was completed and put in operation between Charleston, S. C., and Savannah, Ga., about the year 185—.

(5) At the time said railroad was constructed the predecessors in title of the defendant Allen Searson, as complainant is informed and believes, owned the track of land hereinafter described, and said line of railroad was constructed, completed and put in operation through said tract of land in the year 185— or about that time, and said Charleston & Savannah Railroad Company had entered upon and begun the construction of said railroad through said tract of land prior to that time.

(6) That the said act incorporating the said Charleston & Savannah Railroad Company, among other things, provided:

"XI That in the absence of any written contract between the said company and the owner or owners of land through which the said railroad may be constructed, in relation to said land, it shall be presumed that the land upon which the railroad may be constructed, together with one hundred feet on each side of the center of said road, has been granted to the said company by the owner or owners thereof; and the said company shall have good right and title to the same (and shall have, hold and enjoy the same) unto them and their successors so long as the same may be used only for

the purposes of the said road and no longer, unless the person or persons to whom any right or title to such lands, tenements or hereditaments descend or come, shall prosecute the same within two years next after the construction of such part or portion of the said road as may be constructed upon the lands of the person or persons so having or acquiring such right to the title aforesaid; and if any person or persons to whom any right or title to such lands, tenements or hereditaments belong, or shall hereinafter descend or come, do not prosecute the same within two years next after the construction of the parts of the said road upon the lands of the person or persons so having or acquiring such right or title as aforesaid, then he or they and all claiming under him or them, shall be forever barred to recover the same: *Provided,* that nothing herein contained shall affect the rights of feme coverts, infants, or persons beyond the seas, until two years after the removal of their respective disabilities."

(7) That on or about the 1st day of June, 1919, and at various times between that date and the date of the filing of this bill of complaint the defendant, Allen Searson, unlawfully and without authority and under claim of hostile and exclusive ownership and in denial of the complainant's right and title to its right of way, entered upon the land and right of way of complainant and inclosed under fence a part of said right of way; the same being a strip of land in the county of Colleton, S. C., adjacent to the land of defendant, containing 5.35 acres and measuring on the northern side 3,182.8 feet, on the eastern side 91.4 feet, on the southern side 3,316.8 feet, and on the western side 77.4 feet, which said tract of land is within 100 feet of the center of said railroad and was, by the said charter of said Charleston & Savannah Railroad Company, granted to said company and its successors, and is now the property of complaint herein.

(8) That there was and is no written contract between the owner or owners of said above described tract of land

and the said Charleston & Savannah Railroad Company, which constructed said railroad through and over said tract of land, and under the said charter of said company the said land (being within 100 feet of the center of said railroad) is presumed to have been granted to said company and its successors by the owner thereof, and the said company and its successors have good right and title thereto to have and to hold and enjoy the same for the purposes of said railroad; that neither did the owner nor any person or persons having a right to title to said land, by descent or otherwise, present or prosecute a claim to the same within two years after the construction of said railroad upon said land and by said charter to said owner and all persons claiming under him are forever barred to recover the same and under and by virtue of said charter complainant is the owner, as the successor in title to said Charleston & Savannah Railroad Company, of the said tract of land, and has good right and title thereto for the purposes of its said railroad.

(9) That all the rights of way, property, rights and franchises of the said Charleston & Savannah Railroad Company passed to and became vested in the Savannah & Charleston Railroad Company in 1867, and from the Savannah & Charleston Railroad Company passed to and became vested in the Charleston & Savanah Railway Company in 1880, and from the Charleston & Savannah Railway Company passed to and became vested in the Savannah, Florida & Western Railway Company in 1901, and from the Savannah, Florida & Western Railway Company passed to and became vested in your complainant, Atlantic Coast Line Railroad Company, April 10, 1902, and your complainant is now the successor to and the owner of the said railroad and of all the property, rights of ways, rights, and franchises of said Charleston & Savannah Railroad Company as has been judicially decided by the United States Circuit Court of Appeal, Fourth Circuit, in the cases of *Lee v. Atlantic Coast Line Railroad Co.,* 150 F., 775, and *Atlantic Coast Line Rail-*

*road Co., v. Dunning,* 166 F., 850; 94 C. C. A., 128; and as
such successor your complainant is now the owner of the said
tract of land hereinbefore described.

(10) Ever since the construction of said railroad by the
said old Charleston. & Savannah Railroad Company and
during the periods of their respective ownerships by it and
its successors as above alleged, the said companies have
been in exclusive and peaceful possession and control   of
the said railroad, property, rights, rights of way and fran-
chises, including therein said tract of land as part of said
right of way, and have operated said railroad and ever since
the acquisition of said railroad, property, rights of way,
rights, and franchises by your complainant, Atlantic Coast
Line Railroad Company (including therein said tract of land
as part of said right of way), it has been likewise in exclu-
sive and peaceable possession of the same, operating said
railroad so originally constructed by said old Charleston &
Savannah Railroad Company, and complainant, as successor
in title, is now in such possession and is now operating said
railroad and is entitled to the peaceful possession of all of
the rights of way of said old Charleston & Savannah Rail-
road Company including the tract of land hereinbefore de-
scribed.

(11) That, under the laws of the state of South Caro-
lina, one, who trespasses upon and enters upon the right of
way of a railroad company under the assertion of a claim of
hostile ownership and fences in and takes exclusive posses-
sion of a portion of said right of way in denial of the ex-
istence of such right of way and continues in adverse pos-
session of the same for the period of 10 years, can acquire
title to such portion of the right of way so trespassed upon
taken possession of and defeat the ownership of the railroad
company to such portion of its right of way; and complain-
ant alleges that the tract of land herein described is a part
of the right of way of complainant and is necessary for the
purposes of complainant's said railroad, and the same has

been trespassed upon and taken possession of by the defendant, and fenced in under claim of exclusive and hostile ownership, and, if defendant is permitted to remain in such adverse possession thereof, his possession will in time ripen into title to same, and complainant will be deprived of a valuable portion of its right of way essential to it for the purposes of its railroad; that complainant's railroad in and through the states hereinbefore alleged forms a through line between southern and northern points, and the volume of its business has so greatly increased that it has found it necessary to double-track much of its railroad and will hereafter have to double-track more thereof, and the right of way granted to complainant through said tract of land by said charter is necessary for complainant to perform its functions as an interstate common carrier, and complainant alleges that its right of way is valued as an entirety, and the right of complainant to its right of way free from a trespass, such as the trespass of defenadant herein, is a most valuable right far in excess of the sum or value of $500.

(12) That complainant has repeatedly given due notice of its necessity for said tract of land as part of its right of way for the purposes of its said railroad and demanded of the defendant the recognition of its right to said land and the removal of the fence therefrom, but the defendant has refused and still refuses to recognize plaintiff's rights to said land and to remove said fence, and remains in exclusive possession of said tract of land and asserts exclusive right to the possession thereof and denies plaintiff's title to its said right of way and has forbidden and forbids complainant from the necessary entry on and use of said land as a part of its right of way although defendant has full knowledge of complainant's right to use the same for railroad purposes.

(13) That, unless defendant is restrained and enjoined from hindering and interfering with complainant in the use and occupation of said land as part of its right of way, com-

plainant will be unable to properly perform its public functions as a common carrier of interstate commerce, will be deprived of a portion of its right of way, and will suffer irreparable loss and damage.

(14) That complainant has been damaged by the unlawful trespass of defendant in the exclusion of complainant from its said portion of its right of way in the sum of $500.

Wherefore, complainant demands judgment, and prays: (1) That an injunction be granted forever enjoining the said defendant, Allen Searson, his servants and agents. tenants, and all other persons under his or their authority, direction, or control from further hindering and interfering with the complainant in the use and occupation of its said right of way and said tract of land as a part thereof, and that said defendant, his agents, servants, and tenants be commanded to remove or cause to be removed from said right of way and tract of land said fence so that complainant will not be further hindered in the full use and possession of its said right of way; (2) for $500 damages for the unlawful detention of said right of way; and (3) for such other and further relief as may be just and proper and the cost of this. action.

## ANSWER

The defendant, answering the complaint herein, would respectfully show to the Court:

(1) That this defendant has no information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the complaint.

(2) That this defendant has no information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the complaint herein, except that this defendants specifically denies that the Atlantic Coast Line Railroad Company, their predecessors in title, or any other railroad or corporation, is the owner of, in possession of, or entitled to land, for right of way or otherwise, 100 feet in width on each side of the center of said railroad, where

said railroad adjoins the property of this defendant. This defendant owns land near the station of Ashepoo, S. C., in Colleton County, through which the Atlantic Coast Line Railroad Company has a right of way, in width only that upon which the roadbed stands, which right of way does not exceed at any place 15 feet in width from the center of the track.

(3) Answering the third and fourth paragraphs of the complaint herein, this defendant has no information upon which to base a belief as to the truth of same, and therefore denies them.

(4) Answering paragraph 5 of the complaint herein, this defendant admits that his predecessors in title owned certain land near the station of Ashepoo, Colleton County, at the time of the construction of a railroad, as alleged in said paragraph 5, but this defendant alleges that his predecessors in title under a written contract gave to the said Charleston & Savannah Railroad Company a right of way only wide enough to build its track upon, which right of way at no place exceeded 15 feet from the center of the track, and that this right of way, to wit, 15 feet from the center of the track on each side, is the only right of way which at any time any railroad company has been in possession of through lands belonging to this defendant.

(5) Answering paragraph 6 of the complaint herein, this defendant alleges that article 11 of an Act of the Legislature of South Carolina, as set forth in said paragraph, is unconstitutional, in that it seeks to deprive citizens of real estate and property without due process of law, as provided for by the Constitution of the United States and of the state of South Carolina, and that said act in no way is valid or in force.

(6) This defendant denies the allegations of paragraph 7 of the complaint herein, but alleges that his predecessors in title and this defendant have been in undisputed, recognized, and peaceable possession of lands described in said

paragraph 7 from time immemorial, and for at least 100 years prior to the begining of this suit.

(7) This defendant further alleges that the plaintiff has at no time owned or been in possession of the tract of land described in paragraph 7 of the complaint.

(8) Answering paragraph 8 of the complaint herein, this defendant denies same, and alleges that, at the time the said Charleston & Savannah Railroad Company constructed a railroad through lands now owned by this defendant, it was contracted in writing between the said railroad company and this defendant's predecessor in title that said right of way should be only sufficiently wide for the railroad bed for the railroad to be at that time constructed; that this certain written contract, executed by this defendant's predecessor in title, is, or should be, in possession of the plaintiff herein; that said written contract was recorded in the public records for Colleton County or district prior to the year 1860, but said record was destroyed by fire about the year 1864, but that said original contract is now, or should be, in the possession of the plaintiff herein; that, under said written contract, the plaintiff's predecessor in title went into possession of only a right of way sufficient for the roadbed to rest upon, which right of way at no place was more than 15 feet from the center of the track, and that the plaintiff and all of its predecessors in title have on numerous and various occasions recognized this defendant's ownership, and that of his predecessors of said lands; that the plaintiff herein has at numerous times sought to secure a wider right of way from this defendant and his predecessors in title, and that the plaintiff herein has never owned or been in possession of the property described in paragraph 7 of the complaint herein, either actually, presumptively, or by written contract or possession, but that said property described in said paragraph belongs absolutely and in fee to this defendant.

(9) Answering paragraph 9 of the complaint herein, this

defendant has no information upon which to base a belief as to the truth of said allegation, and therefore denies the same, but this defendant specifically and positively denies that the plaintiff is now the owner of the tract of land referred to in said paragraph 9.

(10) Answering paragraph 10 of the complaint, this defendant denies that the plaintiff or its predecessors in title have been in possession of or owned the lands referred to in paragraph 7 of the complaint. This defendant admits that there has been a railroad through said lands, but alleges that said railroad owned and occupied only a right of way not exceeding 15 feet in width from the center of the track.

(11) Answering the eleventh paragraph of the complaint herein, this defendant admits that he is in possession of said tract of land, and alleges that he had good title to same, and that his predecessors in title have been from time immemorial in complete possession, by reason of ownership, and that said possession and ownership has been advere to any claim which the plaintiff or its predecessors in title may have had to said land, and that said ownership has been recognized on numerous occasions by the plaintiff and those thorugh whom it claims.

(12) Further answering paragraph 11 of the complaint herein, this defendant alleges that the plaintiff, if it needs and desires a greater right of way than it owns, can secure same in accordance with the laws of the state of South Carolina.

(13) Answering paragraphs 12, 13, and 14 of the complaint herein, this defendant denies said three paragraphs.

Wherefore, this defendant, having fully answered the complaint herein, prays that the same be dismissed, with costs.

## EXCEPTIONS

(1) That his Honor erred in admitting in evidence the map of the plaintiff, the error being (a) that there was no proof of the making of the plat, the witness testifying that

it was not made by him; (b) that said map was not an ancient document, nor a muniment of title; (c) that there was no proof that the defendant, or his predecessors in title, acquiesced in any way in the line shown on said map; (d) that the introduction of said map was prejudicial to the rights of the defendant, in that it showed lines that neither the defendant nor his predecessors had agreed to; and (e) that it was not shown that the said map was made from an actual survey.

(2)   That his Honor erred in admitting the testimony of the witness W. G. Furlong and all other witnesses heard during the case along the same line to the effect that neither the defendant nor his predecessors had made complaint as to the right of way; the error being that, the defendant claiming to own the said land, and that the same never did vest in the plaintiff, it was prejudicial to his right to allow testimony to be offered to the effect that the defendant had not complained about the use of the right of way.

(3)   That the trial erred in not allowing the witness J. M. Patterson, and the defendant, A. Z. Searson, to testify as to statements made to them by Mrs. H. E. Bellinger, a predecessor in title of the defendant, concerning the existence of a written contract with the railroad company as to the right of way; the error being that this question related to substantive facts concerning the existence of an ancient document, the original and record of which had been destroyed or lost, as appears from the testimony, and that, therefore, this testimony would not rank as hearsay.

(4)   That the trial judge erred in not admitting the testimony of the witness Daniel Pickney to the effect that the railroad employees had told him that they could not get dirt from the lands of Mr. Speight; the error being that this testimony was admissible, in that it showed an admission, on the part of the railroad company, as to the ownership of the lands in dispute by the defendant's predecessors in title.

(5)   That the trial judge erred in not admitting the testi-

mony of the witnesses Jim Leadon and A. A. Paterson and the defendant, A. Z. Searson, to the effect that the trains of the plaintiff used to stop in front of the Bellinger home, now owned by the defendant; the error being that said testimony was admissible, in that it showed the existence of some agreement between the defendant's predecessors in title and the plaintiff as to the use of the right of way, and was directly responsive to the issue raised by the answer.

(6) That the trial judge erred in not admitting the testimony of the witnesses Vanly Gettis and A. Z. Searson as to statements made by one John Winston, a section foreman; the error being that said testimony as to such statement was admissible, in that they were directly responsive to the issues raised by the answer and that they were in the nature of an admission by an authorized agent of the plaintiff as to the extent of the right of way, it appearing from the testimony that the said Winston was sent to the scene with specific authority, and therefore any statement made by him would be binding upon his principal.

(7) That the trial judge erred in refusing to allow the testimony as to the width of the right of way of the railroad company through an adjoining tract of land; the error being that this testimoniy was directly responsive to the testimony of the plaintiff, and admissible to show the extent of the right of way existing in that locality, and also to show waiver of the width of the right of way as granted by the charter.

(8) That the trial judge erred in not admitting the testimony of the defendant, A. Z. Searson, as to statements made to him by the foreman in charge of the filling in of the trestle of the railroad company on the property in question; the error being that said foreman was the agent of the principal, with full authority to bind it, and that any admission made by him would be the admissions of the principal, and the further error that any statements made by the foreman will be directly responsive to the testimony that said trestle

was filled in in accordance with specifications of the defendant's predecessors in title, thereby constituting an admission that the railroad company had no right of way to the width now claimed.

(9) That the trial judge erred in refusing to admit in evidence the letter of L. B. Houck to the defendant; the error being that the said L. B. Houck was a duly authorized attorney for the railroad company and that this letter clearly recognized the defendant's ownership of the lands, and would therefore constitute in admission upon the part of the plaintiff.

(10) That the presiding judge erred in directing a verdict for the plaintiff in this case; the error being that there was at least enough testimony in the record to go to the jury on the entire case, particularly upon the question of whether or not the railroad company had ever had possession of the right of way claimed by them, or whether or not they had waived the rights given them by the charter, and accepted a narrower right of way, or whether or not they had abandoned any right of way conferred upon them by the charter, and had acquiesced in, and recognized the ownership of the adjoining tract of land to the limit claimed by the defendant and his predecessors in title.

(11) That the trial judge erred in not directing a verdict for the defendant, the error being (a) that the testimony showed that no consideration was ever paid for the use of said right of way and the right of eminent domain depends upon the principle of just compensation; (b) that the testimony did not show that the plaintiff had been in possession within the last 40 years; (c) that the testimony showed that the defendant and his predecessors in title had been in possession for the last 20 years; (d) that the testimony did not show that the plaintiff had been in possession within the last 10 years; (e) that the testimony showed that the defendant and his predecessors in title have never parted with the legal title, any rights under the charter having been

waived by the plantiff; (f) that the testimony failed to show that the plaintiff's title was better than that of the defendant's; and (g) the presumption of title and possession of the plaintiff under its charter having been positively rebutted by the testimony and it having been positively proved that the plaintiff had recognized the right of the defendant and his predecessors in title up to 15 feet from the center of the track, the plaintiff would now be estopped to claim a wider right of way.

*Mr. R. M. Jefferies,* for *appellant,* cities: *Charter of Plaintiff's predecessor:* 12 S. C. Stat., 271. *Railroad company may release or abandon part of right of way:* 33 Cyc., 219 and 221; *Width of right of way in absence of express grant:* 141 Ala., 388; 37 So., 677; 141 Ala., 335; 37 So., 490; 38 Neb., 847; 57 N. W., 739; 120 Iowa, 724; 22 R. C. L., 870. *Question of abandonment or non-user is for jury:* 93 S. C., 397; 76 S. E., 1091; 82 S. C., 24; 61 S. E., 1089; 15 S. C., 10; 12 Rich. L., 228; 9 Rich. L., 228. *Effect of absence of consideration paid by railroad company:* 7 S. C., 324; 7 S. C., 174. *Admissibility of hearsay admissions against interest:* 123 S. C., 399; 115 S. E., 764. *Admissibility of evidence of width of right of way on adjoining tracts:* 93 S. C., 397; 76 S. E., 1091. *Cases distinguished:* 100 S. C., 258; 109 S. C., 444; 96 S. E., 189. *Cultivation of right of way as adverse possession:* 85 S. C., 134; 67 S. E., 235; 63 S. C., 267; 41 S. E., 299.

*Messrs. FitzSimons & FitzSimons* and *I. A. Smoak* for respondent cite: *Admissibility of map as ancient document and as muniment of title:* 113 S. C., 278; 110 S. C., 380; 100 S. C., 258; 22 S. C., 541; 21 S. C., 508; 14 S. C., 542; 1 Rich., 54; 1 McC., 272; 2 N. & McC., 400; 1 Bay., 364. *Declaration of predecessor in title admissible only when against interest:* 123 S. C., 399; 113 S. C., 394; 95 S. C., 135; 43 S. C., 380; 36 S. C., 598; 23 S. C., 399; 1 R. C. L., 468 and 522. *Declaration of wheelbarrow hand or section*

*foreman inadmissible as to title of railroad company to its right of way:* 100 S. C., 258. *Proof of lost written instrument:* 2 Rich., 140; 2 Mills Cons. R., 80; 10 R. C. L., 917. *Party cannot object to ruling in his favor:* 123 S. C., 399; 86 S. C., 62; 2 R. C. L., 56. *Party cannot object to error he invited:* 109 S. C., 160; 86 S. C., 8; 69 S. C., 460; 2 R. C. L., 238. *Offer of compromise inadmissible:* 102 S. C., 130; 88 S. C., 453; 82 S. C., 465; *Directed verdict proper:* 127 S. C., 205; 126 S. C., 312; 124 S. C., 70; 121 S. C., 324; 99 S. C., 417. *Right of way of plaintiff under its charter cannot be acquired by prescription:* 67 S. C., 499. *Operation of one tract sufficient assertion of right to entire width of right of way:* 105 S. C., 319. *Right of way of railroad company held in trust for public; cannot be abandoned:* 85 S. C., 440. *Non user of part of right of way for twenty years does not infer abandonment:* 87 S. C., 71. *Requisites of adverse user of railroad right of way sufficient to give title:* 117 S. C., 494; 114 S. C., 459; 109 S. C., 444; 100 S. C., 258; 85 S. C., 134; 82 S. C., 24; 79 S. C., 372; 67 S. C., 548; 63 S. C., 266; 1 R. C. L., 693, 700 and 716. *Case distinguished:* 103 S. C., 507. *Defendant purchased his property with notice of the plaintiff's easement:* 105 S. C., 320. *Where testimony as to adverse possession susceptible of only one inference it is matter of law:* 112 S. C., 2. *Adverse possession is affirmative defense:* 36 S. C., 344.

November 9, 1926.

The opinion of the Court was delivered by MR. ACTING JUSTICE RAMAGE.

This case was commenced May 16, 1922, to enjoin and remove a fence encroachment on the right of way of plaintiff, which was placed on the said right of way shortly before the commencement of the action in 1919: The case came on for trial before his Honor, Judge Henry, who directed a verdict in favor of the plaintiff, and this appeal is

from the said directed verdict and rulings of his Honor.

Plaintiff alleged that it was the owner of a right of way of 100 feet on each side of the center of its line railway through Colleton County and that the defendant had taken possession of about 5.35 acres of the right of way of plaintiff by fencing the said land in, and that, if defendant be allowed to keep the said under fence under a claim of hostile possession, plaintiff will lose its easement in that strip of land by adverse possession. Plaintiff asked that defendant be enjoined from interfering with plaintiff in its occupation and use of the said right of way and for $500 damages. Defendant denies that plaintiff has a right of way of 100 feet and alleges that plaintiff only has a right of way of about 15 feet on each side of the center of the track. The pleadings and exceptions will be set out in the report of the case.

It was admitted that plaintiff had the title to the right of way at the point in question, but it was not admitted that the width was 100 feet on each side of the center of the track, and it was further admitted that Allen Searson had the title to the property on each side of the right of way, but the extent of Allen Searson's possession was not admitted.

We shall first consider the tenth and eleventh exceptions, first, as to his Honor's directing a verdict in favor of plaintiff; and secondly, his failure to direct a verdict for defendant.

The first question that arises is: What was the width of the right of way of plaintiff at the point in question? It was admitted that plaintiff is the owner of the right of way of the Charleston & Savannah Railroad Company under its charter found in 12 Statutes, at page 271. So much of the said charter as is relevant is as follows:

"That in the absence of any written contract between the said company and the owner or owners of land through which the said railroad may be constructed, in relation to

said land, it shall be presumed that the land upon which the railroad may be constructed, together with one hundred feet on each side of the center of said road, has been granted to the said company by the owner or owners thereof; and the said company shall have good right and title to the same (and shall hold and enjoy the same) unto them and their successors, so long as the same may be used only for the purposes of the said road and no longer."

The defendant contends in his answer that—

"Said right of way should be only sufficiently wide for for the railroad bed for the railroad to be at that time constructed."

Defendant contends that this stipulation was in writing, but, even after being in a position to get in secondary evidence to this effect, defendant never put in any such secondary evidence tending to prove this. Plaintiff made a clear and full showing that a thorough search had been made for any written agreement or copy or record of the same and that none could be found.

Viewed from the standpoint of common sense. it is unreasonable that any railroad company would build a line of road under such a stipulation, or that at the time the road was built, any larger landowner should attempt to exact such a stipulation from parties who were attempting to build a line of railway through his isolated plantation. A justifiable eagerness to see the road constructed would have prevented any person of ordinary foresight and sense from trying to impose such a stipulation in any contract for the right of way. Not only was there no proof of any such agreement, but it was unreasonable even to conjecture that any such agreement in writing or otherwise ever existed. The date of the charter of the Charleston & Savannah Railroad Company was in the year 1853 and the road was thereafter constructed. There was some testimony of "borrow" pits along the line of railroad, where earth was taken for the construction of the road. The charter

gave 100 feet on each side from the center of the road, and, in default of any written agreement, it is presumed that the right of way at the point in question in this case extended to these limits.

In the year 1891, M. C. Kollock (misspelled Collock), the engineer for Charleston & Savannah Railroad Company, made for the railroad a complete survey and map of the right of way along its entire length and at the point in question. No encroachments whatever were shown. J. M. Patterson, a witness for the defendant, was present when this survey was made. In 1896, G. M. Gadsden (misspelled Gaston), then engineer for Charleston & Savannah Railroad Company, under constructions, took the Kollock may and again located and staked out the right of way as shown by said map. He testifies that there were then no encroachments at the point in question. He had an iron stake or monument set 100 feet from the center of the road to mark the right of way and the 71-mile post nearest the point in question is still there. There was undisputed testimony to the effect that at various times the right of way was cleared to 100 feet, and in 1903 the timber was cut to 65 feet from the center of the road. A number of witnesses testified that the right of way was cleared off and that there were no encroachments there until 1919.

Witnesses Daniel Pickney, E. M. Winston, H. W. Hyett, B. P. Hooker, Harry Crosby, J. P. Thomas, J. H. Lymock, and John Brown testified that for a long period of time the right of way was cleared off as a right of way. In fact the running of trains, the keeping up the track, and the clearing and burning off the right of way, or a portion thereof, would be a sufficient notice that plaintiff was claiming the right of way, and was making such use and adverse claim as the nature of the case would permit. Defendant admitted, by implication in his testimony, that prior to 1897 the right of way had been cleared to a distance of 100 feet, and that the right of way had been at times burned off "100

and 150 feet to the ditch." The Kollock map showed that the railroad claimed the right of way for 100 feet on each side of the center of the track.

"A verdict [should] be directed where the evidence is not sufficient to warrant a reasonable jury in basing a verdict upon it." *Howell v. Atlantic Coast Line R. Co.,* 99 S. C., 417; 83 S. E., 639.

The following cases hold that a verdict cannot be predicated on surmise or conjecture, and that, where the testimony is all one way, a verdict must be directed that way: *Furman University v. Waller,* 124 S. C., 70; 117 S. E., 356; 33 A. L. R., 615. *Sparton Mills v. Davis,* 126 S. C., 312; 119 S. E., 905. *Bushardt v. United Inv. Co.,* 121 S. E., 324; 113 S. E., 637; 35 A. L. R., 637. *Harrison v. Phœnix Co.,* 127 S. C., 205; 120 S. E., 848.

"A right of way under charter cannot be acquired adversely to the company by prescription. The width of the strip of land necessary for railroad purposes is fixed under the authority of the state, and this fact creates a strong presumption that the whole of it should be preserved as necessary for the purposes for which it was set apart." *Matthews v. Seaboard Air Line Ry.,* 67 S. C., 499; 46 S. C., 335; 65 L. R. A., 286.

"The construction and operation of one track upon its location is an assertion of its right to the entire width of its right of way. The presence of a track constantly in use is a defiant badge of ownership, and the only practical assertion of title that can be made." *Id.* Jones on Easements.

"The construction and operation of the railroad were an assertion of right to the entire width of the right of way." *Beck v. Northwestern R. Co.,* 105 S. E., 319; 89 S. E., 1018.

"The public has an interest in the construction and operation of railroads as highways which are burdened with duties to the public. Therefore a railroad company cannot dispose of or so use its right of way as to impair or de-

stroy its ability to serve the public." *Blume v. Southern Ry.,*
85 S. C., 440; 67 S. E., 546.

A railroad company has some of the elements of a *quasi*
public corporation. "The right of way of a railroad, having
been acquired for a public purpose, cannot be lost by a pre-
scriptive use or adverse possession, unless by the erection
of a permanent structure, accompanied by notice to the rail-
road company of an intention to claim adversely to its right."
*Atlanta and C. A. L. R. Co. v. Limestone,* 109, S. C., 444; 96
S. E., 188.

"According to the decisions of this court, the owner
of the fee in a railroad right of way has the right
to use as much thereof as is not in the actual use and
occupancy of the railroad company, provided the use be not
inconsistent with the claim of right for railroad purposes. It
follows from this that a right of way of a railroad, having
been acquired for a public purpose, cannot be lost by
prescriptive use or adverse possession, unless by erection of
a permanent structure, accompanied by notice to the railroad
of an intention to claim adversely to its right." *Id.*

"In accord with the principle declared in Mrs. Epperson's
Case (85 S. C., 140; 67 S. E., 235), the jury were further
told that merely inclosing a part of the right of way by a
fence was not sufficient to put the company on notice of ad-
verse possession, but that there must be in addition thereto,
proof of notice to the company that the fence was an as-
sertion of an adverse or hostile possession." *Atlantic Coast
Line R. Co. v. Dawes,* 100 S. C., 258; 84 S. E., 830; Ann.
Cas., 1917A, 1272.

In the case of *Atlantic Coast Line R. Co. v. Epperson,*
85 S. C., 134; 67 S. E., 235, the court affirmed the following:

" 'Now, then, one of the questions is: "What will amount
to hostile ownership?" The mere fencing of it, or using it
for pasture or cultivation, or the like, is not sufficient; it
takes something more than that, because it might be that the
railroad had no use at that time, at that particular time, for

that right of way thus used, and the presumption is that the owner of the fee is using it by permission, or, at least, if not by permission, the presumption is that he is using it with the recognition'of the right of the railroad to demand the surrender of it at any time it may be needed for railroad purposes, so that the mere fencing of it or occupancy of it is not itself enough.' "

"Adverse possession is an affirmative defense."*Suber v. Chandler,* 36 S. C., 344; 15 S. E., 426.

And to constitute adverse possession it must be open, notorious, exclusive, hostile, continuous, and unbroken for the whole period. *Hill v. Saunders,* 6 Rich., 62; *Ouzts v. McKnight,* 114 S. C., 303; 103 S. E., 561. *Clary v. Bonnett,* 114 S. C., 459, 103 S. E., 779; 1 R. C. L., 700-716.

"Where the testimony as to adverse possession is susceptible of but one inference, the question is one of law for the Court." *McIntosh v. Kolb,* 112 S. C., 2; 99 S. E., 356.

"Successive possessions for less than the statutory period cannot be tacked, unless by descent cast." *King v. Smith,* Rice, 10; *Porter v. Kennedy,* 1 McMul, 354; *Garrett v. Weinberg,* 48 S. C., 28; 26 S. E., 3.

Occasional or temporary use or occupation is not sufficient. *Jackson v. Lewis,* Cheves, 259; *McCullough v. Wall,* 4 Rich., 68; 53 Am., Dec., 715. "Single, isolated occurrences are valueless, unaccompanied with actual continued, exlusive possession by permanent structure, or fence with notice, such as the law requires, to constitute adverse possession of right of way." *Atlantic & C. A. L. R. Co. v. Limestone,* 109 S. C., 444; 96 S. E., 188. *Southern Ry. v. Gossett,* 79 S. C., 372; 60 S. E., 956. *Atlantic Coast Line R. Co. v. Epperson,* 85 S. C., 134; 67 S. E. 235. *Bailey v. Irby,* 2 Nott & McC., 343; 10 Am. Dec., 609.

Plaintiff acquired the property April 10, 1902, and defendant acquired his hand on January 8, 1903. So defendant found plaintiff in the possession and use of the right of way, and, under the testimony, up to that time there was no adverse possession, in the way of a permanent structure and notice, to conform to the Limestone and Epperson Cases cited above. The mere fact that the land had been cultivated even up under the trestle in rice did not show any adverse use, as the cases show that the landlord or landowner may go ahead and use the land as he always did for the purpose not inconsistent with the use of the railroad, and the railroad will not be barred from afterward putting it to use for railroad purposes when the occasion and necessity arise. It appears that nothing happened, until 1919, of such a nature as would have a tendency to show adverse possession and notice under the law. At this action was brought before the 10-year period had elapsed, what was done in 1919 does not count in this case.

We shall take up the facts set out in appellant's argument to show waiver and adverse possession.

(1) The cultivation of part of the right of way. That has already been disposed of under the Epperson Case.

(2) The care on the part of the railroad not to throw any timbers, etc., in the rice field. This proves nothing aside from the care of the railroad not to injure the landowner in the legitimate use of his land, and acts of thoughtfulness like that ought not to be turned into facts damaging to the rights and interests of a party. If the land owner had the right to have crops there, the railroad owed him the duty not to injure him if it could be avoided. We see nothing in this, except setting a good example for all men to follow in dealing with a neighbor.

(3) Negotiations about filling in where the trestle was. If the railroad considered the rights and wishes of the man owned the land on both sides of the right of way, we see no element of adverse possession there. Per-

haps the objections of the landowner were good and were adopted by the railroad. At any rate the mere fact that they changed their plan about filling in would show no element of adverse possession. Appellant overlooks the fact that most of the ground in which this dirt was to be placed was within the 30 feet which appellant admits is the right of way of the railroad; and, if this fact has any force in the case, it could only go to show that appellant had the *whole* roadbed by adverse possession, to which he makes no claim.

(4) The fact that the railroad company did not get dirt to make the fill from the land of a farmer owner of the premises. This proves nothing, except that the railroad perhaps saw the justice of his objection, and, if not that, it saw that the land would be injured unnecessarily and it went out of its way to get dirt elsewhere. No matter what the motive of the railroad was, it does not show adverse possession under the rule of a "permanent structure and notice," laid down in the "Limestone" and other cases. Even if the railroad desisted from getting the dirt there merely to avoid trouble, that makes no showing of adverse possession under the law of this state. It does not appear from the testimony that the dirt was being taken *solely* from the right of way, but merely from the land of Mr. Speights; and it is likely that the road might have had to go outside of the right of way in order to get the soil, and this of itself would have been a good and sufficient reason for getting the soil elsewhere.

(5) The stakes, four in number. This fact of the stakes being there proves nothing. There is no evidence as to how they got there or for what purpose. But the testimony is that the railroad had them taken up. In the absence of proof as to who put them there, or for what purpose they were put there, it is idle to conjecture. We further see nothing in what was done by or said to the section foreman and hands along there at the point in question that would make a case of adverse possession for the jury, especially in view

of the fact that this was done while the railroad and premises were in the ownership and possession of the predecessors in title of the plaintiff and defendant under the cases above cited.

We see no error in his honor's directing a verdict for the plaintiff, and in his failure to direct a verdict for the defendant, and the exceptions raising these questions are dismissed.

We shall now take up the exception 1 relating to the introduction of the Kollock map. In the first place the map itself was more than 30 years old, and in the discretion of the court could be introduced as an ancient document. G. M. Gadsden testified of his own knowledge as to his own work locating and staking out the right of way in 1896. He used the Kollock map and noted on the map the result of his own work. He testified as to his own notations from his own survey, which were placed by him upon this old map. It was shown to come from the proper source, and was a muniment of title. *Goings v. Mitchell,* 110 S. C., 380; 96 S. E., 612. *Atlantic Coast Line R. Co. v. Dawes,* 100 S. C., 258; 84 S. E., 830; Ann. Cas., 1917A, 1272. *Thompson v. Brannon,* 14 S. C., 542; and other cases cited by plaintiff. This exception must be dismissed.

In regard to the point made by the second exception. The testimony was merely negative and was in the discretion of the presiding judge. The fact that no complaint was made, would at least be revelant as to the attitude of the parties, and showed their relationship to the matters in the question. There is no reversible error as to the second exception.

The third exception alleges error in the trial judge in not allowing the witnesses J. M. Patterson and A. Z. Searson to testify as to statements made to them by Mrs. H. E. Bellinger, a predecessor in title of defendant, concerning the existence of a written contract with the railroad company. The case of *Wilson v. Southern R.,* 123 S.

C., 399; 115 S. E., 764, and many other cases that might be cited show that only declarations *against* interest may be introduced, and a self-serving declaration like the one in question cannot be admitted. This exception is dismissed.

The fourth exception cannot be sustained: The testimony of Daniel Pinckney is to vague and indefinite to base anything on—he seemed to be drawing more of a conclusion or inference than to be testifying as to facts. He merely made a statement as to what some "hands" said said that was as definite as he ever got. Under the rule laid down in th "Dawes Case," merely stating what "hands" said, without being more definite as to who the "hands" were, and putting the matter in such shape that the satemen might be contradicted, was not enough to come within the rule so fevidence; and his honor, who has had much experience in his career as solicitor in the introduction of evidence, was quite right in excluding such testimony. *Atlantic Coast Line R. Co. v. Dawes,* 100 S. C., 258; 84, S. E., 830, Ann. Cas., 1917A, 1272.

There is no merit in the fifth exception in not allowing testimony as to the stopping of trains in front of the Bellinger home. To attempt to prove a contract in writing by the mere stopping of trains is too indefinite to be introduced in evidence. And, too, the relevancy of testimony is in the discretion of the trial judge. It has not been shown that this discretion was abused in this instance. To prove the contents of a lost document, after showing the preliminaries, some one who knows the contents must testify to them. *Howell v. House,* 2 Mill Const., 80. *Reynolds v. Quattlebum,* 2, Rich., 140; 10 R. C. L., 917, 918, and cases cited. We can see no logical connection between the testimony and the facts of this case, and there was no error in excluding the same.

The sixth exception complains of error in not allowing statements of John Winston, the section foreman, as to the width of the right of way. There

was no proof that he had any authority to bind the company by any statements as to the width of the right of way. That was clearly out of the scope of his agency. The case of "Dawes," 100 S. C., 258; 84 S. E., 830 Ann. Cas., 1917A, 1272, is directly in point here. There was not only no proof that John Winston had such authority, but the testimony was the other way. Mr. Archer, as roadmaster, testified that he had no such authority. This exception has no merit. What is said here also applies to the eighth exception.

The seventh exception must be dismissed. The width of the right of way through an adjoining plantation could have no relevancy in this case. To allow such testimony would make a case interminably long, and these matters are in the discretion of the trial judge. It has not been made to appear that he did not wisely use his discretion, And too it appears that appellant's counsel himself objected to just such testimony and was sustained by the court, when the witness Archer was on the stand. 2 R. C. L., 238, 239.

The ninth exception charges error in excluding a letter in the nature of an offer of compromise. There was clearly no error in this under the well-known rule on the subject. *Smith & Furbush Machine Co. v. Johnston,* 102 S. C., 130; 86 S. E., 489. *Woodward v. Southern Ry.,* 88 S. C., 453; 70 S. E., 1060. *Tenhet v. Atlantic Coast Line R.,* 82 S. C., 465; 64 S. E., 232 and cases cited.

It is therefore the judgment of this court that the exceptions be dismissed and the judgment of the circuit court be affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, BLEASE, and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.