15863
GRANITEVILLE CO. v. WILLIAMS *ET AL.*
(39 S. E. (2d), 202)

*Messrs. Hendersons & Salley,* of Aiken, for Appellant,

*Messrs. Williams & Busbee,* of Aiken, for Respondents,

*Messrs. Hendersons & Salley,* of Aiken, for Appellant, ▮

August 5, 1946.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous opinion of the Court.

This case involves the question of title to a lot of land, measuring fifty by one hundred feet, located in the village of Graniteville, in Aiken County, upon which a combination store and dwelling is situated. Claiming title to said property and alleging that respondents were unlawfully in possession, appellant commenced this action in March, 1945, for the purpose of seeking an adjudication that said property belonged to it and securing possession thereof. Respondent L. E. Williams alleged in his answer that he now claimed no interest in said lot of land, having sold and conveyed same by fee simple deed to his wife, respondent Effie Williams, in 1934. Respondent Effie Williams denied in her anwer that appellant had any interest in said property and asserted that she was in possession of and owned said premises. She alleged that she entered into possession in 1934 under claim of title from her husband and has since occupied the property in dispute "openly, adversely, continuously and exclusively, for a period of more than ten years" and thereby had acquired title by adverse possession. She further alleged that appellant had not within ten years before the commencement of this action been seized or possessed of the premises and was barred by the statute (Section 375, Code of 1942) from bringing this action.

It appears that respondents Love, Brantley and Mrs. Fowler, who were formerly tenants, never claimed any in-

terest in the property. They have now moved from the premises and may be eliminated from the case. The contest, therefore, is one between appellant and respondent Effie Williams. At the close of all the evidence, each of these parties moved for a directed verdict. Both motions were refused by the trial Judge, who held that the record title to the property was in appellant, but submitted to the jury the question of whether respondent Effie Williams had acquired title by adverse possession. The jury rendered a verdict for said respondent. Appellant further made a motion, which was refused, for a verdict *non obstante veredicto*. By appropriate exceptions, appellant contends that the trial Judge erred in refusing its motion for a directed verdict and that he further erred in refusing one of its requests to charge.

Appellant operates, and has operated for approximately one hundred years, a textile plant at Graniteville, in Aiken County. (Its corporate name was formerly Graniteville Manufacturing Company but was changed in 1937 to that of the Graniteville Company by proper amendment to its charter.) Appellant owned and was in possession of the parcel of land in dispute, together with that part of the village of Graniteville which surrounds it, for many years prior to 1902. During that year it conveyed to the Augusta-Aiken Railway and Electric Corporation a right-of-way over its property for the construction and operation of an interurban electric trolley line between Aiken and Augusta. In 1920, it conveyed to the same grantee a small parcel of land in the village of Graniteville upon which to build a freight station and side track. This lot deeded in 1920 for the freight station and side track, together with the width at this point of the original right-of-way granted in 1902, makes up the lot in dispute. It was stipulated in each of these deeds that in the event that the trolley line was ever abandoned, the property described therein would revert to the grantor. The Augusta-Aiken Railway and Electric Corporation was merged into the South Carolina Power Company in 1924. The property conveyed was used in connec-

tion with the electric trolley line until 1929, when the trolley line was abandoned and the tracks removed. Under the terms of the conveyances mentioned, the grantee had the right to remove any buildings placed on the property within sixty days after the interurban electric trolley line was abandoned.

L. E. Williams, the husband of respondent Effie Williams, testified that some time during 1929, about the time of the abandonment of the line, he purchased the parcel of land in dispute from the South Carolina Power Company and that a deed conveying the property was executed and delivered to him by the freight agent of the South Carolina Power Company at Graniteville, which was deposited by him in his safe and thereafter lost or misplaced. Williams went into possession at the time he claims to have purchased the property and used the building situated thereon as a warehouse to store groceries. At this time he was operating a grocery store nearby. In 1934, he suffered a nervous breakdown and lost his health. Shortly thereafter, on May 21, 1934, he sold and conveyed to his wife the lot in dispute and seven other parcels or tracts of land, together with certain personal property, for the sum of $1,200.00. The deed was prepared and executed in the office of the Clerk of Court for Aiken County and was recorded on the same day it was executed. Mrs. Williams testified that she paid the consideration at the time the deed was executed and produced a receipt to that effect. This deed recites a consideration of $1,200.00 and the granting clause is to "Mrs. Effie Williams, her heirs and assigns forever in fee simple". Six of the parcels or tracts of land are described in the deed without any qualifying words. However, in conveying the parcel of land in dispute and another parcel known as the "barber shop" lot, it is stated that the grantor conveys "all my right, title, interest and estate in and to" these two parcels. The deed contains a full description of the lot in controversy, following which it is stated that this is "the same property purchased by L. E. Williams about the year 1929 from South Carolina

Power Company". The *habendum* clause is in the usual form used for a conveyance in fee simple and the deed contains a general warranty clause.

Immediately after purchasing the property in controversy and receiving the deed, Mrs. Williams took possession and commenced the operation of a grocery store. A sign bearing the name "Mrs. L. E. Williams" was placed over the front door of the store. Shortly after moving into the building, Mrs. Williams added three rooms, a screened back porch, and a pump, at an estimated cost of $700.00. She, her son, and her daughter worked in the store. Her husband did not assist in any manner. Since 1934 she has had the exclusive management and control of the property. In 1942, she closed the store and made three rooms of the store building by inserting partitions and cutting windows at a cost of approximately $100.00. Since that time she has rented these rooms and collected the rents. She testified that no one ever undertook to disturb her in her possession or to assert any claim to the property prior to the commencement of this action, and that until then she did not know appellant was claiming any interest in the property.

One of the witnesses for appellant, Mr. Griffis, testified that he had been connected with the appellant since 1926; that he was made secretary in 1934 or 1935 and remained in this capacity for a period of four or five years; that for several years he lived within about a block of the property in dispute; that he recalled when the improvements were made on the building in 1934; that he passed by this property quite frequently; that his wife traded at this store, but he never entered the building; that while he understood that Mrs. Williams, her son and daughter worked in the store, he assumed that the store was being operated by Mr. Williams, although he admitted never seeing Mr. Williams around the premises; and that he did not recall seeing the sign over the front door of the store.

On October 30, 1936, at the request of appellant, Mr. Williams signed a letter in which he acknowledged that he oc-

cupied the property in question by permission of appellant and agreed to surrender possession when requested to do so. At the same time he signed a similar letter relating to the "barber shop" property which he occupied under lease from appellant. The two letters were identical with the exception of the description of the property which was inserted at the bottom of each letter below the place for his signature. His explanation of this was that he read the description at the bottom of the letter relating to the "barber shop" property and signed that letter, but signed the other letter without reading the description, thinking that it was a copy. There is no testimony showing that Mr. Williams had any authority to act for his wife in this transaction or that she had any knowledge of his having done so.

It appears that appellant had no actual knowledge of the execution of the deed by Williams to his wife prior to the commencement of this action. The action was originally commenced against Williams alone and the tenants on the property. When he asserted in his answer that the property had been deeded to his wife, the complaint was then amended by making her a party defendant. The witnesses for appellant testified that no effort was made to secure possession of the property until shortly before the commencement of this action because appellant had no particular need for it, but now desired possession in order to carry out a planned program of street and village improvements which had been interrupted by the recent World War.

Appellant moved for a directed verdict upon the ground that the evidence was insufficient to sustain Mrs. Williams' plea of adverse possession because (1) there was no evidence of ouster, and (2) her claim is under color of title based on the deed from her husband which was insufficient to constitute color of title. These grounds will be discussed in the order stated.

■■ It is true, as held by the trial Judge, that when the interurban trolley line was abandoned, the property in ques-

tion, as well as the other property conveyed in the deeds mentioned, reverted to appellant which became entitled to immediate possession. The alleged deed from the South Carolina Power Company to Willams conveyed no title and it follows that the deed by him to his wife could not convey good title to the premises. The alleged deed to Williams is important, however, in showing that he did not enter and take possession in 1929 by permission of appellant. His entry was under a claim of right and title from the South Carolina Power Company and as against appellant hostile at its inception. From 1929 until he conveyed the property to his wife in 1934, the record fails to show that Williams ever recognized any right or title of appellant in the premises or that his occupancy was in subordination to the title of appellant in any manner. Appellant's counsel are in error in stating in their brief that "Williams held certainly in subservience to the title of Graniteville Company". Nor does the record show that Mrs. Williams has ever recognized any right or title in the property by appellant. She entered as a purchaser from her husband under a claim of title and ownership and there is abundant testimony showing that her possession has been open, notorious, exclusive, hostile, continuous and unbroken from 1934 until the time of the commencement of this action, a period of more than ten years.

■ Appellant, however, asserts that it had no actual knowledge of the deed to Mrs. Williams and the fact that she was claiming the property adversely was never "brought home" to it. It will be observed that there never existed a trust or fiduciary relation between Williams and appellant during the period when he was in possession or between Mrs. Williams and appellant after she occupied the property. The rule governing ouster where such relation exists is, therefore, not applicable. Under the circumstances of this case, actual knowledge was not necessary. It was sufficient if the hostile possession of Mrs. Williams was so open, visible, and notorious that appellant in the exercise of ordinary diligence

should have had knowledge of the adverse character of her claim. *Bryce v. Cayce,* 62 S. C., 546, 40 S. E., 948; *Miller v. Cramer,* 48 S. C., 282, 26 S. E., 657; *Powers v. Smith,* 80 S. C., 110, 61 S. E., 222; *Haithcock v. Haithcock,* 123 S. C., 61, 115 S. E., 727; 2 C. J. S., page 560. The trial Judge charged the jury in effect that actual notice was not necessary, but that "he (she) can do those things, which would reasonably be construed as bringing it to the intention (attention) of the owner. Thus, if a person of ordinary intelligence, in the exercise of ownership or possession of land would know it was being done adversely". There is no exception to this portion of the charge.

■ Appellant emphasizes its understanding that Williams was in possession and the fact that it obtained from him in 1936 a letter stating that he was occupying the property by permission of appellant. But we think that the question of whether the circumstances reasonably warranted such an understanding or assumption was one for determination by the jury. Williams denied that he intended to make any such acknowledgment as to the property in dispute. But it is immaterial whether he did or not, for at this time he was neither in possession nor claiming any interest in the property and there is no showing that he was authorized to make any such acknowledgment in behalf of his wife. The record fails to show that Mrs. Williams misled appellant in any manner.

For the foregoing reasons, we think the trial Judge properly overruled the first ground of the motion for directed verdict. We next discuss the question of whether the deed to Mrs. Williams was sufficient to constitute color of title.

■ Color of title means "any semblance of title by which the extent of a man's possession can be ascertained". *Turpin v. Brannon,* 3 McC., 261. It "is anything which shows the extent of occupant's claim". *Sprott et al. v. Sprott et al.,* 114 S. C., 62, 96 S. E., 617. "The object of color of title is not to pass title. In that case it would be title, not color of title.

The only office of color of title is to define the extent of the claim and to extend the possession beyond the actual occupancy to the whole property described in the paper. * * * It is by no means necessary that the paper should be in the form of a deed. A bond or even a receipt would be sufficient". *Fore v. Berry,* 94 S. C., 71, 78 S. E., 706. Also, see *Gray v. Bates,* 3 Strob., 498. Manifestly, an instrument in order to constitute color of title need not be valid as a muniment of title. The extent of the occupant's claim founded on an instrument of writing is not dependent upon the validity of such instrument. *Frady v. Ivester,* 129 S. C., 536, 125 S. E., 134. A deed may be color of title although the grantor was without interest or title in the land conveyed. "There is a material difference between proving a deed as a part of a chain of title and introducing a paper to show the extent of the party's possession". *Kennedy v. Kennedy,* 86 S. C., 483, 68 S. E., 664.

Accordingly, the great weight of authority is to the effect that a quitclaim deed may constitute color of title and support adverse possession. *Hall v. Waterman,* 220 Ill., 569, 77 N. E., 142, 4 L. R. A. (N. S.), 776; *Lloyd v. Mills,* 69 W. Va., 241, 69 S. E., 1094, 32 L. R. A. (N. S.), 702; *Bourne et al. v. Wiele et al.,* 159 Wis., 340, 150 N. W., 420; *Jones et al. v. Coal Creek Mining and Manufacturing Co. et al.,* 133 Tenn., 159, 180 S. W., 179; *Whitehead v. Bennett,* .... Colo., ...., 22 P. (2d), 168; *Warlick v. Rome Loan & Finance Co.,* .... Ga., ...., 22 S. E. (2d), 61; Annotations 4 L. R. A. (N. S.), page 776, and 88 Am. St. Rep., page 719; 1 Am. Jur., page 901; 2 C. J. S., page 603. The cases relied on by appellant to sustain a contrary view are largely those where one tenant in common conveyed to a stranger his right and interest in the property which he jointly owned with others. These cases are obviously not applicable to the facts of the instant case.

██ Counsel for appellant state that the trial Judge sustained their contention to the effect that the deed to Mrs. Williams was insufficient to constitute color of title. The rec-

ord is not altogether clear on that. He distinctly held, and properly so, that this deed conveyed no title and then stated: "Therefore, the question of color of title goes out of this case and the case has to be decided on whether she has acquired title under her plea of adverse possession". We are rather inclined to think that he meant that the question of paper title was not an issue in the case. But whether he did or not is not important. Under appropriate instructions, the question of title by adverse possession was submitted to the jury and decided adversely to appellant. Even though the deed mentioned did not constitute color of title, this would not preclude Mrs. Williams from establishing title by adverse possession. Unless expressly required by statute, color of title is not necessary to the acquisition of title by adverse possession. *Turpin v. Brannon, supra* (3 McC., 261); 1 Am. Jur., page 898; 2 C. J. S., page 576; annotations 88 Am. St. Rep., page 703, and 15 L. R. A. (N. S.), page 1178.

▇▇ Finally, appellant contends that the only claim of title asserted by Mrs. Williams in her answer is based upon the deed from her husband and having entered into possession under said deed, that she "cannot rid herself of its effect, and it having failed her, shift her position and repudiate it". We think, as did the trial Judge, that appellant's counsel have misconstrued the nature of the claim set up in the answer of Mrs. Williams. She clearly interposed a plea of adverse possession for the statutory period of ten years. It is true that she alleges that she entered into possession under the deed from her husband, but this allegation was obviously for the purpose of showing the nature of her entry and the extent of her claim. Under her plea of adverse possession, it was an entirely appropriate allegation to sustain her contention that she entered not as an intruder or trespasser, but under a claim of right and title. We have carefully examined numerous cases from other jurisdictions cited by appellant on this question, but find that they are not applicable. As previously pointed out, the overwhelming weight of authority is to the effect that a quitclaim deed confers color of title

even where the grantor has no right or title in the land. We find no suggestion in any of these cases that adverse possession·cannot be established where entry is made under an invalid quitclaim deed because it would have the effect of repudiating the terms of such deed. Under appellant's view, title by adverse possession could never be established in any case where the person asserting same entered the premises under an instrument which was ineffectual to convey title. The deed to Mrs. Williams purported to convey fee-simple title. She entered into possession under that instrument. It did not convey good title. We see no reason why she cannot now claim that she has acquired the fee by adverse possession.

In *Frady v. Ivester, supra* (129 S. C., 536, 125 S. E., 134), the defendant held two mortgages on the land in dispute. Thereafter the mortgagors conveyed said property to the defendant by a deed which stipulated that it should be regarded as a mortgage until a certain specified date, but if the grantors failed to pay said mortgage indebtedness, the deed would then become "absolutely in fee forever" to the grantee. The grantors failed to pay the mortgage indebtedness by the time stipulated. Shortly thereafter the defendant notified the grantors that she claimed the property in her own right and demanded that they vacate the premises. The defendant then entered into possession and held the land adversely for more than ten years. She based her claim of title upon that "written instrument, as being a conveyance of the premises in question". Defendant's claim by adverse possession was sustained by the Court. The Court stated: "Where, as in this case, possession is taken under a written instrument which the occupant repudiates as a mortgage, and claims to be a 'conveyance of the premises', and *where the adverse possession is proved by other evidence than the instrument,* we see no reason why the writing should not be looked to, to define the extent of the claimant's possession". (Italics ours.)

■ We, therefore, conclude that the trial Judge did not err in refusing appellant's motion for a directed verdict. The only other question raised by the exceptions is the contention that the trial Judge erred in refusing one of apepllant's requests to charge. This request embodies principles which we have held to be unsound and was, therefore, properly refused.

In view of the foregoing conclusions, we find it unnecessary to consider the additional grounds assigned by respondents for sustaining the judgment below.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.