20443

Gloria P. BAKER, Respondent, v. PILOT LIFE INSURANCE COMPANY, Appellant.

(235 S. E. (2d) 300)

*J. Munford Scott, Jr., Esq.,* of *Wright, Scott, Blackwell & Powers,* Florence, *for Appellant,*

*Wylie H. Caldwell, Jr., Esq.*, of Florence, *for Respondent,*

May 26, 1977.

LITTLEJOHN, Justice.

The plaintiff sued the defendant insurance company for disability benefits provided under a policy issued to her, and obtained a favorable jury verdict. Thereafter the trial judge awarded attorney fees to plaintiff's counsel as permitted by Sec. 37-167.1 of our Code of Laws. The defendant has not appealed the jury verdict, but has appealed the order awarding attorney fees. We reverse.

This code section permits the trial judge to award attorney fees when an insurance company's refusal to pay ". . . [is] without reasonable cause or in bad faith".

A review of the evidence is necessary in determining the issue submitted to the court.

The plaintiff was an insurance agent and ran the insurance office of the Peoples Bank at Florence. She admitted that she knew that the insurance application was an important part of the insurance contract. She had been dealing with insurance for a number of years. Notwithstanding her knowledge of insurance, she falsified the application on August 12, 1974, by withholding from the company the fact that she had seen Dr. Blackwell on five comparatively recent occasions:

1. On March 22, 1971, she went to see Dr. Blackwell because of an anemic condition. She was referred to Dr. Blackwell by another doctor, not named. The visit with the other doctor was not disclosed to the company on the application.

2. In November of 1973, she saw Dr. Blackwell for a chest cold and ". . . complaining of some dizziness with sudden head movements."

3. On December 10, 1973, she saw Dr. Blackwell, complaining of soreness in the left chest with deep breathing.

4. On June 3, 1974, she saw Dr. Blackwell again, because of cramps and abdominal pain. It was on this visit that the doctor observed a swollen lymph node on her neck, which later developed to be a cancer.

5. On July 30, 1974, she saw the doctor complaining of a knot in her stomach.

The policy became effective on or about September 15, 1974. She went to see Dr. Blackwell on October 15, 1974, and found that she had a cancerous condition.

The policy insured the plaintiff for loss resulting from sickness, which ". . . means sickness or disease contracted and commencing after the effective date of this policy (or prior to the effective date provided the insured did not have any knowledge of its existence or receive any medical advice or treatment for said sickness or disease) and causing loss of time commencing while this policy is in force.

The company defended, first, on the ground that she had received medical advice relative to a lymph node on her neck when she visited the doctor on June 3, 1974. Describing that visit, the doctor testified as follows:

"[S]he mentioned that she had noted a minor swelling in a lymph node, which I checked.

. . . . .

"My advice as I recall to her was that these were not significantly enlarged and that it was associated with the viremia that she had and that it would regress, but that if it persisted should be checked."

This is the lymph node which was proved to be cancerous in October. The lower court directed a verdict as to this first defense, in effect holding that the only reasonable in-

ferences to be drawn from the whole of the testimony was that she had not received medical advice from the doctor about the preexisting condition. There is no appeal from this ruling.

The insurance company next defended on the ground that the plaintiff "knowingly concealed material facts from the defendant, to the damage of the defendant, thus defrauding the defendant and rendering the contract voidable." The issues involved in this defense were submitted to the jury, which found in favor of the plaintiff.

We find no justification in the record for the plaintiff's concealment of the important fact that she had visited Dr. Blackwell on several occasions. The company was entitled to this information. Mr. Marsh, a special representative of the insurance company, testified that the application is a part of the contract. He testified: "If we had received any information concerning any treatment by any additional doctors then our underwriter would have written the doctor direct to determine how many visits were made and what was the diagnosis on each individual visit." He further testified that if the company had been given the information that the plaintiff had been to Dr. Blackwell, there would have been additional investigation to determine whether or not the policy would be issued.

Clearly, it was not the intent of the legislature to require payment of attorney fees in every contested case won by the insured. Attorney fees may be allowed the plaintiff only when the refusal to pay is ". . . without reasonable cause or in bad faith, . . .." Every case must be determined on its own facts.

The plaintiff would not necessarily be entitled to have his attorney's fees paid by the company merely because a verdict was directed in favor of the plaintiff. For example, the case might hinge on the interpretation of an ambiguous statute and the company might be justified in refusing to pay because the statute has never been interpreted. The interpreta-

tion of the statute might be so questionable as to justify a refusal to pay.

On the other hand, the fact that a jury issue exists should not always excuse an insurance company for refusal to pay. For example, it might appear obvious from preparations for trial that one devil would give incredible testimony for the insurance company, while six saints would give credible testimony for the plaintiff. In such a case, the company might not be justified in refusing to pay, even though the devil supplied a *scintilla* of evidence which created a jury issue.

This is not a case in which the judge was justified in finding that attorney fees should be assessed against the company. The facts force the conclusion that the company was justified in defending, and that the refusal to pay was neither without reasonable cause, nor made in bad faith.

Fees may be allowed only upon a finding of fact supported by the evidence. The work of the trial judge in making this determination is in the nature of an equitable proceeding (never a jury matter), and upon a review by this Court the question is not whether the judge abused his discretion or whether there is any evidence to support the finding. This Court, as held in *Townes Associates v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976), has jurisdiction to find facts in accordance with its views of the preponderance of the evidence. The evidence on the attorney fee issue preponderates in favor of the company.

Reversed.

NESS and RHODES, JJ., concur.

LEWIS, C. J., and GREGORY, J., dissent.

GREGORY, Justice (dissenting):

I respectfully dissent. I agree with the majority that the scope of review in this case is such that we may find facts according to our view of the preponderance of the evidence.

However, the facts in this case lead me to believe that the trial judge correctly awarded attorneys' fees to the respondent.

The question presented is this: did Pilot refuse to pay respondent's claim within 90 days of demand "without reasonable cause or in bad faith"? South Carolina Code § 37-167.1 (Cum. Supp. 1975). I think it did.

Pilot's refusal to pay was based on a hospital admission report by Dr. Blackwell and one section of respondent's claim that was based on the hospital report. These documents inadvertently implied that the cancer had existed in June 1974 and that respondent and Dr. Blackwell knew that fact. However, Dr. Blackwell wrote in two letters, one to respondent's attorney and the other to Pilot, that neither he nor respondent knew of the cancer before October 15, 1974. He wrote that in June 1974 he had treated respondent for viral gastroenteritis. He said that at that time she had had a minor enlargement of the glands, which he had associated with the gastroenteritis. He had attached no significance to the swelling; he made no note of it in his medical records and expected it to regress. Dr. Blackwell's timely clarification was summarily rejected by Pilot.

The majority surmises, while describing the glandular enlargement of June 1974, "This is the lymph node which was proved to be cancerous in October." I view the evidence differently. Nowhere in the record is it established as fact that nodes which were swollen in June were found to be cancerous in October. While treating Mrs. Baker for the viral gastroenteritis in June, Dr. Blackwell did tell her that if the swelling persisted, she should have it checked. But in the subsequent visit of July 30 she did not mention any swelling and Dr. Blackwell did not notice any. This implies that the swelling did not persist. The most reasonable inference is that the node which was swollen in June was not "proved to be cancerous in October."

The trial judge found, in his order awarding fees, that "the defendant seized upon a statement given by a doctor upon admission of the plaintiff to the hospital, and based its refusal to pay upon the statement, ignoring all the surrounding circumstances, in spite of the plaintiff's attempts to explain." This is a fair summary of the evidence, and I agree with it. Pilot was "without reasonable cause" in refusing to pay.

I would affirm the judgment of the trial court and award an additional $500.00 attorneys' fee to respondent as a reasonable sum for perfecting this appeal.

LEWIS, C. J., concurs.