21720

Margaret M. STRICKLAND, as Executrix of the Estate of Leon Prince Strickland, Respondent, v. The PRUDENTIAL INSURANCE COMPANY OF AMERICA and General Motors Acceptance Corporation, Defendants, of whom The Prudential Insurance Company of America is Appellant.

(292 S. E. (2d) 301)

*George E. Lafaye, III*, of *McCants, Nelson, Green & Lafaye*, Columbia, *for appellant.*

*James P. Stevens, Jr.*, and *George M. Hearn, Jr.*, of *Stevens, Stevens, Thomas, Hearn & Hearn*, Loris, *for respondent.*

June 7, 1982.

LITTLEJOHN, Justice:

This is an action to collect the proceeds of a policy of credit life insurance commenced by Margaret M. Strickland, as Executrix of the estate of her husband, Leon Prince Strickland, against General Motors Acceptance Corporation (GMAC) and the Appellant, The Prudential Insurance Company of America.

On December 21, 1977, Mr. Strickland purchased an Oldsmobile by paying $1,000 as a down payment and executed an installment sales contract for the remaining balance to the automobile dealer. This contract was subsequently assigned to GMAC. Under the terms of the installment sales contract, Prudential agreed to insure the purchaser's life for the outstanding indebtedness of $6,286.10.

The credit life insurance provision in the contract signed by Mr. Strickland contained the following provision:

> I, the Buyer for life insurance, understand that the insurance is only available to a buyer who makes the following declaration to induce Prudential to effect such insurance: I do hereby declare that within the past three months, (1) I have not consulted or been under the care of a doctor or other practitioner for cancer, . . .

It is undisputed that Mr. Strickland's physicians knew prior to December 21, 1977 that he had terminal cancer. The Executrix of Mr. Strickland's estate and other family members asserted that the deceased had no knowledge at the time the contract was executed that he was "under care of a doctor" for cancer or knew he had cancer.

Mr. Strickland died of cancer on June 22, 1978, and by letter, a claim for benefits was filed by the Executrix. GMAC informed the estate that the claim was being denied because of misrepresentations in Mr. Strickland's insurance application. The Executrix commenced this action against GMAC and the insurance company to collect the insurance proceeds.

GMAC and the insurance company asserted as part of a defense to this action ". . . that the statement signed by Leon Prince Strickland was, in fact, untrue and known to him to be untrue, and the representation was material to the risk and the representation was made with the intent to mislead, deceive and defraud the Defendants and the Defendants plead that the certificate of credit life insurance issued to Leon Prince Strickland was void *ab initio* because of the material misrepresentations and/or the fraudulent misrepresentations made in the application for insurance and, therefore, there is no coverage provided by The Prudential Insurance Company of America."

This action at law was heard by a Special Referee, who recommended judgment against the insurance company, in the amount of $6,830.90, principal and interest. He also recommended attorney fees of $2,276.97 against the insurance company for the unreasonable refusal to pay the claim, as permitted in § 38-9-320, *Code of Laws of South Carolina* (1976).

The Circuit Court confirmed the report of the Special Referee with the exception of the computation of interest on the insurance proceeds awarded. The insurance company appeals from the lower court's order.

The basic issue presented by this appeal is whether there is any evidence from which the trier of fact could find that Mr. Strickland was unaware that he had cancer at the time he signed the installment sales contract. We agree with the claimant's contention that such evidence was presented.

This is an action at law tried by consent before a Special Referee. In an action at law, tried without a jury, as here, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidentiary support. The rule is the same whether the judge's findings are made with or without a reference. The judge's findings are equivalent to a jury's findings in a law action. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

We point out the evidence supporting the contention that Mr. Strickland had no knowledge of his cancer at the time the contract was entered into. The following colloquy between the executrix's attorney and Mr. Strickland's family physician, Dr. Ramseur, appears in the record:

Q. All right, sir.
Now, Doctor, at any time during this treatment, where the diagnosis of carcinoma was made, did you as a family physician advise Prince Strickland that he had cancer?

A. No, sir, never did I advise Mr. Strickland that he had cancer.

Q. All right, sir, did you have a discussion with the family regarding the diagonsis of cancer?

A. Yes, sir, we informed his family and it was determined that it would be in his best interest not to inform him personally that he had cancer.

Q. Why was that?

A. Having treated Mr. Prince Strickland for quite a number of years, we felt that the psychological impact of being told that he had cancer would be one such that would make him give up completely, so we elected quite

intentionally not to inform him that he had cancer, but to tell his family rather than him.

Q. Did you advise his family not to tell him, too?
A. Yes, sir.
Q. Did you discuss this with Dr. Proctor? [The attending surgeon]
A. Right.
Q. And in your discussions with Dr. Proctor, did he agree or disagree with you?
A. Dr. Proctor agreed with me.
Q. Not to tell him [Mr. Strickland]?
A. Right.

Mr. Strickland's widow, daughter and son corroborated the family physician's testimony. The widow testified as follows:

Q. All right. Okay, now, what did your husband die of?
A. Cancer of the lower intestine.
Q. Cancer of the lower intestine? Now Mrs. Strickland did your husband know he had cancer?
A. No.
Q. All right, would you explain that, please, ma'am?
A. Well, Dr. Proctor and Dr. Ramseur thought it was best not to tell him. And I did, too.
Q. And as far as you know, did any of your family tell Prince he had cancer?
A. No, sir.
Q. Did he know that he had cancer when he was dying?
A. No. Not to my knowledge he didn't, no.
Q. Did he ever mention it to you?
A. No, sir, he never mentioned it to me.

In order to vitiate a policy on the ground of fraudulent misrepresentation, it is necessary that the insurer show not only the falsity of the statement challenged, but also that the falsity was known to the applicant, was material to the risk, made with the intent to defraud the insurer, and relied upon by the insurer in issuing the policy. *Atlantic Life Insurance Company v. Beckham*, 240 S. C. 450, 126 S. E. (2d) 342 (1962): *Metropolitan Life Insurance Company v. Bates*, 213 S. C. 269, 49 S. E. (2d) 201 (1948); *Cain v.*

*United Insurance Company,* 232 S. C. 397, 102 S. E. (2d) 360 (1958). This burden must be fulfilled by the insurer by clear and convincing evidence.

The insurance company submits that a notation in hospital records indicates that Mr. Strickland was advised of the cancer diagnosis. From the transcript, it is not clear whether these records were admitted in evidence and considered or rejected. The doctor making the notation was not called as a witness. With or without the hospital record, a question of fact for the judge might have determined the factual issue otherwise, we cannot say that there is not ample evidence to support the findings.

We reverse that portion of the lower court's order which determined that attorney fees should be awarded pursuant to § 38-9-320. That code section permits the court to award attorney fees to a claimant when an insurance company refuses to pay "... without reasonable cause or in bad faith, ..." It was never the intention of the Legislature to require the payment of attorney fees in every case wherein the claimant prevails. This question has been discussed in the cases of *Brown v. State Farm Mutual Insurance Company,* 275 S. C. 276, 269 S. E. (2d) 769 (1980); *Baker v. Pilot Life Insurance Company,* 268 S. C. 609, 235 S. E. (2d) 300 (1977) and in *Madden v. Pilot Life Insurance Company,* 272 S. C. 264, 251 S. E. (2d) 196 (1979). In *Madden,* we said:

> Although the jury determined that the fall was the cause of respondent's disability, the statute patently does not require payment of attorney's fees in every contested case won by the insured. *Baker v. Pilot Life Inc. Co.,* 268 S. C. 609, 235 S. E. (2d) 300 (1977). Attorney's fees should be awarded only when a company's refusal to pay is "without reasonable cause or in bad faith."

It is well known that friends and doctors sometimes conceal cancerous conditions from the victim. Such is perhaps, however, the exception and not the rule. Under the facts of this case, we cannot say that the insurance company's conduct in letting the case go to trial to have the issue determined was

without just cause or in bad faith. An issue was involved which the company was justified in litigating.

Affirmed in part. Reversed in part.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.