1538

Frank JOHNSON, Jr., as agent for the heirs of William F. Pritchard, Respondent v. The Heirs or devisees of William F. PRITCHARD; George Pritchard; Evelina Pritchard; Bell Pritchard; Celia Pritchard; John Pritchard; Lucinda Johnson; James Johnson; Maggie Warren; Evans Warren; Lizzie Johnson; Harry Johnson; Lucy Johnson; Frank Johnson; Louise Johnson; Elmore Johnson; Carrie Johnson; Samuel Johnson; Ella Johnson; Rebecca Williams; John Williams; Laurence Chisolm c/o Sadie Ryan; Bernice Jenkins; Reuben Chisolm c/o Florence Parker; Samuel Williams; and Charles E. Henry and Nettie K. Henry, if living, and all persons unknown having or claiming to have any right, title, estate, interest in or lien upon the real property described in the Complaint herein, being designated collectively as John Doe and Mary Roe; including all persons who may be deceased, minors, in the Armed Forces of the United States, Non Compos Mentis, and under any other disability, Defendants, of whom Charles E. Henry and Nettie K. Henry are Appellants. Appeal of Charles E. HENRY and Nettie K. Henry.

(395 S.E. (2d) 191)

Court of Appeals

*James A. Grimsley, III,* of *Levin, Sams, Grimsley & Sams,* Beaufort, *for appellants.*

*J. Thomas Mikell,* Beaufort, *for respondent.*

Heard May 14, 1990.

Decided Aug. 27, 1990.

GARDNER, Judge:

Frank Johnson, Jr., as agent for the heirs of William F. Pritchard instituted this action against Charles E. Henry, Nettie K. Henry and the unknown and known heirs of William F. Pritchard, and all other persons claiming any interest or lien upon the subject property. Johnson alleged that William F. Pritchard, his heirs and devisees owned by adverse possession the subject property for a period in excess of seventy years and prayed, *inter alia,* that the court declare the heirs to be the owners in fee simple absolute of the subject property. The Henrys answered and by way of counterclaim alleged title beginning with Edgar W. Fripp by way of Head of Family Certificate 178 issued by the U.S. Government shortly after the Civil War. The Henrys also alleged that they had possessed and exercised full and complete do-

minion and control over the subject property during the period in which they alleged paper title. The matter was referred with finality to the Master-In-Equity, who found that the heirs of William F. Pritchard (the heirs) were the owners of the subject property. We affirm.

## ISSUES

The issues of merit are (1) whether the trial judge erred in admitting into evidence the Thomas letter and enclosures, (2) whether there is evidence of record to support the Master's finding that the heirs established title to the subject property by adverse possession and/or presumption of grant, (3) whether the Master erred in holding that once title has been acquired by adverse possession or presumption of grant or lost grant, a subsequent break in occupancy or possession has no effect on the title so acquired.

## FACTS

The heirs allege that they are owners of an 11.70 acre tract of land which constitutes a peninsula jutting out into the marsh of St. Helena Island. The Henrys allege that they have title to a portion of the land described in the complaint. As to that portion of the property not claimed by the Henrys, it is undisputed of record that William F. Pritchard and his heirs have used, occupied, lived upon, farmed and paid taxes on such property since 1884.

The heirs introduced a letter from Calhoun Thomas, of the law firm of Thomas and Thomas, Beaufort, South Carolina, dated July 3, 1937, to the Reconstruction Finance Corporation enclosing a certificate of title and attaching an affidavit of Cummings Pritchard dated October 28, 1935, and an affidavit of Mrs. James R. Macdonald, the widow of James R. Macdonald. Cummings Pritchard's affidavit states that he is a resident of St. Helena Island, Beaufort County, South Carolina, is 63 years of age and is a nephew of William F. Pritchard. The second paragraph of the affidavit was, without objection, read into the record and is as follows:

> Deponent understood and knows of his own knowledge that the said Elizabeth M. Williams later married and was known as Elizabeth M. Dugan. That she sold of [sic]

various parts of the property of her late husband, the said Frederick Williams; that she conveyed to her said son, the said Thomas N. Williams, a Fifteen acre tract on the eastern side of the Club Bridge Creek; and that she conveyed to one James R. Macdonald, a fifteen acre tract thereof, which was split by the said Creek, the greater part of which was on the western side of the said Creek. That the same was later conveyed by the said James R. Macdonald to William F. Pritchard, and was occupied, held and controlled by the said William F. Pritchard as his property, and he made conveyances thereof about the years 1899, 1990, and 1901.

George E. Lenhart, recognized by all parties as an "expert title examiner," testified that William Pritchard conveyed three tracts of land which well could have been carved from the 15 acre tract of land conveyed to Pritchard by James R. Macdonald. Mr. Lenhart described these deeds as being recorded in deed book 24 at page 11; deed book 24 at page 40; and deed book 24 at page 343. Copies of these deeds were introduced and are of record and are respectively dated 17th day of February 1900, 4th day of April 1900 and 20th day of January 1902.

Also read into evidence, without objection, were the following portions of the analysis of title attached to the Calhoun Thomas letter:

This Pritchard tract is a part of the property acquired by the said Elizabeth M. Williams, later Dugan, from the est. of her deceased husband, Frederick Williams. It passed to William F. Pritchard, through conveyances next to be mentioned, and parts thereof were acquired by the present owners, The Lowden Corporation, through previous conveyances.

Conveyance by Elizabeth M. Dugan to James R. Macdonald, containing 15 Acres, more or less, is reported as Page 18 hereof. Page 19 is an Affidavit by one Cummings Pritchard, a nephew of William F. Pritchard, which discloses, among other things, that the property so acquired by James R. Macdonald, reported as Page 18, hereof, was purchased by Mr. Macdonald for the said William F. Pritchard, and was conveyed to him by the said Macdon-

ald. This conveyance was not placed on record, and could not be located. Page 20 is an Affidavit by Mrs. Macdonald, the widow of the said James R. Macdonald, substantiating this information.

The affidavit of Mrs. James R. Macdonald attached to the Thomas letter stated that she was the widow of James R. Macdonald and that she understood and was informed that the subject property was bought by her husband *for* one William F. Pritchard and that later her husband conveyed the property to William F. Pritchard and that he went into the possession of the subject property a long number of years before he sold parcels off about the years of 1898, 1899 and 1900.

The heirs also produced witnesses and testimony to the effect that after William Pritchard's death, his son George Pritchard, occupied the property from the early 1920's until he died about 1930. The heirs of W.F. Pritchard, thereafter, occupied the subject property until the end of World War II when the heirs of W.F. Pritchard moved away from the property. An adjacent landowner planted the open land on the subject property for a number of years with the understanding that the land was Pritchard land. The Pritchards did not occupy the land thereafter.

The appealed order made findings of fact, to which no exceptions have been taken, to the effect that there is no deed into W.F. Pritchard. There is, however, a written statement in the tax books of Beaufort County for 1884 that W.F. Pritchard bought about 15 acres and one building from J.R. Macdonald and that taxes have been assessed to W.F. Pritchard from 1884 to the present.

The Henrys' evidence, in a light most favorable to the heirs, is that their paper title begins with a deed dated December 22, 1947, from Arthur W. Elting to Willard H. Graham which contained the following provision:

> WHEREAS on August 5, 1946, I conveyed to Willard H. Graham by deed which is now recorded in Book 64, Page 443, office of the Clerk of Court of Beaufort County, certain property described as Fripp Plantation on St. Helena Island according to a plat made by Arthur O. Christensen; and WHEREAS it now appears that the property, known as Fripp Plantation, has about 12 acres lying

beyond the creek which was incorrectly designated as the line on said plat. This deed is now given to convey to the grantee all of that land of mine which lies beyond the said creek and which was not included in the above mentioned deed, and more particularly hereinafter described.

The description is of a 12 acre tract of land on St. Helena Island. All subsequent deeds upon which the Henrys base their paper title contain the same *but separate* description as that contained in the corrective deed from Arthur W. Elting to Willard H. Graham.

Importantly, George E. Lenhart, who, as noted, is recognized by all parties as an "expert title examiner" testified that the descriptions of the prior deeds relied upon by the Henrys do not include the subject property.

In 1954 Beaufort County began a modern tax reference system assigning numbers to each parcel of land that is taxed. Under the tax system, a parcel was originally assigned a number in 1954 and thereafter if a separate parcel was sold from it or for whatever reason a new parcel of land started, the new parcel was assigned the old number plus a letter of the alphabet such as "A" or "B." In 1958 the subject property was first taxed as parcel 136-B and that since that time the Henrys have paid taxes on this parcel although the heirs thought they were still paying taxes on the subject land.

## DISCUSSION

### I.

We hold that the trial judge did not err by admitting into evidence the letter and enclosures of Calhoun Thomas.

This is an action at law since it involves title to real estate. In an action at law, on appeal of a case tried without a jury, the findings of fact of the trial judge will not be disturbed on appeal unless found to be without evidence which reasonably supports the judge's findings. The rule is the same where the judge's findings are made with or without a reference. *Strickland v. Prudential Ins. Co. of America*, 278 S.C. 82, 292 S.E. (2d) 301 (1982).

We first address the issue of authenticity. Lenhart testified, "I have access to the old Thomas law firm records."

When later asked if the records obtained from the Thomas law firm contained any statements by any persons that would be in reference to this land, counsel for the Henrys objected on the grounds of hearsay. The trial judge ruled that the Thomas letter and enclosures were ancient documents. No objection was made as to the authenticity of the enclosures which were carbon copies of Thomas's letter of July 3, 1937; affidavit of Cummings Pritchard dated October 28, 1935; affidavit of Mrs. James R. Macdonald dated October 25, 1935 or to the analysis of title which was undated but accompanied Thomas's letter of July 3, 1937.

The general rule is that documents and writings of all kinds purporting to be 30 or more years old, if they are relevant to the inquiry and produced from proper custody and are on their face free from suspicion, are said to prove themselves and are admissible into evidence without the ordinary requirement as to proof of execution and authenticity. Indeed, the Ancient Document Rule is so strong that such instruments are said to prove themselves even though the witnesses are in court. 29 Am. Jur. (2d) Evidence § 856 (1967). *Also see McCormick on Evidence* § 323 (3rd ed. 1984).

We hold that the Thomas letter and enclosures were properly authenticated and that no objection was made to the testimony relating to the authentication or to the trial judge's ruling that these papers were ancient documents. The admission of evidence is within the discretion of the trial judge. *Bankers Trust of South Carolina v. Bruce*, 283 S.C. 408, 323 S.E. (2d) 523 (Ct. App. 1984). The question as to the proof necessary to admit documents as ancient lies largely within the discretion of the trial judge. 29 Am. Jur. (2d) *Evidence* § 857 (1967).

We turn to the Henrys' objection on the grounds of hearsay to the admission of the statements contained in the Thomas letter. A careful examination of authorities reveals a growing majority of the courts of this nation are in favor of the admission of recitals in ancient documents as an exception to the hearsay rule. Rule 803(16) of the Uniform Rules of Evidence is in accord with this trend. Our research discloses that 33 states have adopted this provision of the Uniform Rules of Evidence. The federal rule is in accord. Fed. R. Evid. 803(16). For an exhaustive commentary on this rule of evidence for

both United States courts and State courts see 4 J. Weinstein & M. Berger, *Weinstein's Evidence § 803(16)[01]* (rev. ed. 1988 & Supp. 1990). Also in accord, P. Rothstein, *Evidence State and Federal Rules*, 230 (1983).

Professor Wigmore takes a noncommittal view as to whether ancient documents are admissible as an exception to the hearsay rule. *See* 7 Wigmore, *Evidence* § 2137, 2145 and 2145(a) (Chadbourn rev. 1978). We note, however, that the modern trend began with the adoption of Rule 803(16) of the Uniform Rules of Evidence by Minnesota, Montana and North Dakota in 1977. We are also familiar with the comment by Jon P. Thames on this subject from J. Dreher, *A Guide to Evidence Law in South Carolina*, 107 (J. Thames rev. 1979) which is as follows:

> Professor Dreher (*A Guide to Evidence Law in South Carolina* at pg. 85) saw no reason why South Carolina should carve out such a hearsay exception. This writer disagrees. The same trustworthiness that age lends for the purpose of identification is present as to contents. If parties have acted in a manner inconsistent with contents of the document, the fact is subject to proof and an issue of fact is raised. Excepting the contents of ancient documents from hearsay just admits the evidence it does not cast it in stone.

After a very careful and exhaustive study of the many pertinent cases and other authorities, we are convinced that this state should follow the rule of the appealed order to the effect that duly authenticated ancient documents of 30 years or more constitute an exception to the hearsay rule.

For the reasons given, we reject the Henrys' contention that the trial judge erred in admitting into evidence the Thomas letter, with enclosures.

## II.

We agree with the following paragraph of the appealed order:

> 5. The first theory upon which the Plaintiffs will prevail is that the public statement in the 1884 tax records indicating a conveyance of 15 acres and one building from

J.R. MacDonald to W.F. Pritchard is sufficient to constitute "color of title." See *Graniteville v. Williams*, 209 S.C. 112, 39 S.E. (2d) 202 (1946) at 207 stating that "color of title" need not be a deed but that a bond or receipt will be sufficient. While not as important if standing alone, the import of the tax records is substantiated by the 1935 Affidavits by Cummings Pritchard, nephew of W.F. Pritchard and Mrs. James R. MacDonald. These records and their contents were admissible as ancient documents which is an exception to the hearsay rule. The theory of admission is that the documents were created long before the current litigation was begun or contemplated so there is no motive to create a false document or information. McCormick (1954 Edition), *Evidence* § 298; Model Evidence Code § 527; and Uniform Rules of Evidence § 63(29).

Stated differently, the effect of (1) the notation on the tax book that W.F. Pritchard had purchased from James R. Macdonald 15 acres, (2) the affidavit of Mrs. James R. Macdonald that her husband, James R. Macdonald, purchased the 15 acres *for* W.F. Pritchard and later conveyed it to him, and (3) the fact that the deed into James R. Macdonald is of record taken together constitute color of title.

Much has been written about the subject of "color of title." As a basis for adverse possession, it need not have as its object the passing of title. Perhaps the most definitive case on this subject is the case of *Graniteville Co. v. Williams*, 209 S.C. 112, 121, 39 S.E. (2d) 202, 207 (1946). There the court held that:

Color of title means "any semblance of title by which the extent of a man's possession can be ascertained." It "is anything which shows the extent of occupant's claim." The object of color of title is not to pass title. In that case it would be title, not color of title. The only office of color of title is to define the extent of the claim and to extend the possession beyond the actual occupancy to the whole property described in the paper. * * *It is by no means necessary that the paper should be in the form of a deed. A bond or even a receipt would be sufficient. [Citations omitted.]

There is a very illuminating article entitled *Constructive Adverse Possession Under Color of Title in South Carolina*, 10 S.C.L.Q. 279 (1957). From this Law Quarterly article, we quote the following:

> Suppose that the writing relied upon for color of title cannot be produced by the adverse claimant. Under such circumstances, the trial judge may in his discretion admit secondary evidence of its contents and thereby enable him to show the extent of his claim. The writing, however, must have been in the possession of the claimant or of those under whom he held at sometime prior to the commencement of the action. Citing the case of *Stanley v. Shoolbred*, 25 S.C. 181 (1886).

*Id.* at 286.

In the case before us, the trial judge acted within his discretion in concluding from the enclosures contained in the Thomas letter that James R. Macdonald had conveyed to W.F. Pritchard the 15 acre tract of land and that the deed had been in the possession of W.F. Pritchard who unquestionably went into possession of the subject land. At this point we observe that the title of the heirs to a good portion of the original 15 acres has not been questioned by the Henrys and further no one else has asserted title to this undisputed portion of the 15 acres.

We find that there is evidence of record supporting the trial judge's finding of fact that W.F. Pritchard went into possession of the 15 acre tract of land in 1884 and that he and his heirs and distributees occupied under color of title the subject land until after World War II with the necessary elements of adverse possession, viz., continuously, hostilely, openly, adversely, notoriously and exclusively.

The landmark case relating to title in land litigation is *Haithcock v. Haithcock*, 123 S.C. 61, 115 S.E. 727 (1923). There it is held there are four ways in this state by which a person may prove title to land, viz., (1) grant from the state or from the proprietors, (2) to trace the title back to a common source existing between the parties, (3) presumption of grant which is the occupancy of the subject property continually, hostilely, openly, adversely, notoriously and exclusively for a period of 20 years, and (4) adverse possession for a pe-

riod of 10 years with the necessary elements of adverse possession.

We hold that there is evidence of record that the heirs acquired title to this property by both adverse possession and presumption of grant and affirm the trial judge's ruling with respect to these two methods of acquiring title.

The next question presented in this discussion is how might the Henrys defeat the heirs' title? This may be accomplished by saying or doing nothing at all and relying upon the heirs' failure to show a title in themselves in one of the four ways enumerated. We have held that the heirs did not fail in proving title by adverse possession and presumption of grant.

The Henrys, in order to defeat the heirs' title, may also show a better title in themselves. Did the Henrys do this? They did not establish that they had an original grant from the state or one of the proprietors. The Henrys did not establish a common source of title. The question then is whether the Henrys established title by adverse possession or presumption of grant.

The Henrys do not claim title by possession which was continuous, hostile, open, adverse, notorious and exclusive. Rather, they claim adverse possession pursuant to S.C. Code Ann. § 15-67-210 (1976). This section in effect provides that possession is presumed when a person owns paper title. This is true except that open, hostile and notorious possession is required where the true owner is without actual knowledge of the hostile claim. This is the law of South Carolina and the general law of the land. *See* 2 C.J.S. *Adverse Possession* § 48 (1972). *Also see Gregg v. Moore,* 226 S.C. 366, 85 S.E. (2d) 279 (1954).

We accordingly affirm the Master's holding that the heirs established good and fee simple title to the subject property by proof of adverse possession and presumption of grant.

### III.

For the reasons stated above, we affirm the Master's ruling in holding that once title has been acquired by adverse possession or presumption of grant, a subsequent break in occupancy or possession has no effect on the title so acquired unless the title is defeated in one of the methods set forth above. *See* 3 Am. Jur. (2d) *Adverse Possession* § 109 (1986).

## CONCLUSION

We hold that the trial judge did not err in admitting into evidence the Thomas letter and enclosures because there was no objection made relating to the authentication of the documents or the reading into the record those portions thereof which were read into the record. We further hold that the ancient document rule constitutes an exception to the hearsay rule. And in conclusion we hold that the heirs established good title by both adverse possession and presumption of grant and further that the Henrys failed to defeat the heirs' title by one of the methods of proving title set forth in the case of *Haithcock v. Haithcock, supra.* Accordingly, the appealed order is affirmed.

Affirmed.

SANDERS, C.J., and CURETON, J., concur in separate opinions.

SANDERS, Chief Judge (concurring):

In my opinion, our Supreme Court, almost sixty-five years ago, recognized without qualification, a rule permitting the introduction of documents more than thirty years old as ancient documents. The case on which I rely is *Atlantic Coast Line Railroad v. Searson,* 137 S.C. 468, 135 S.E. 567 (1926). There, the Court affirmed the decision of the Circuit Court allowing a certain map to be introduced in evidence. Among the reasons given by the Court for affirming the decision was the fact that "the map itself was more than 30 years old, and in the discretion of the [Circuit] [C]ourt could be introduced as an ancient document." *Id.* at 493, 135 S.E. at 574. No subsequent decision by an appellate court in this state, at least not any of which I am aware, has overruled or modified the holding in this case.

I am aware that respected treatise writers Professor Thames and Ms. Von Zharen, as well as Professor Reiser, have concluded that the rule in this state on ancient documents relates only to the authenticity of such documents and does not provide for an ancient documents exception to the rule against hearsay. *See* J. Thames & W. Von Zharen, *A Guide to Evidence Law in South Carolina* 58 (1987); W. Reiser, *A Comparison of the Federal Rules of Evidence with*

*South Carolina Evidence Law* 54 (3d ed. 1987). They rely on the decision of the United States Court of Appeals in *Town of Ninety Six v. Southern Railway*, 267 F. (2d) 579 (4th Cir. 1959). There, the Court held that "the [ancient documents] rule, except as it relates to documents purporting to transfer land or other property, deals only with the authentication of the document sought to be proved, and not with its competency or admissibility." *Id.* at 583.

In my opinion, *Town of Ninety Six* should not be given undue weight. Although the case resolved a dispute which arose in South Carolina, the Court of Appeals did not purport to follow the law of this state pertaining to the admission or exclusion of evidence. (The holding of the Court was subsequently superseded by the adoption of Rule 803(16) of the Federal Rules of Evidence, specifically adopting an ancient documents exception to the rule against hearsay.) Moreover, the case has never been cited or even acknowledged by any appellate court in this state.

*Searson* is the only case decided in this state directly addressing the issue of whether statements contained in ancient documents can be introduced in evidence. Nothing about the language used by the Supreme Court in that case suggests the ancient documents rule in this state relates only to authenticity.

CURETON, Judge (concurring):

I concur with the result reached by the majority. I find it necessary, however, to comment regarding Section I of the Opinion. While I agree the Thomas letter qualified as an ancient document I would hold the court did not err in considering its contents as evidence for the reason that the appellants did not preserve their hearsay objection to the admission of the document.

I would not find it necessary, however, to adopt the rule that ancient documents are admissible for their content as an exception to the hearsay rule. *See Town of Ninety Six v. Southern Ry. Co.*, 267 F. (2d) 579) 4th Cir. 1959); J. Dreher, *A Guide To Evidence Law In South Carolina* 107 (J. Thames rev. 1979); 7 Wigmore, *Evidence* Section 2145(a) (Chadbourn rev. 1978). In so finding, I note the letter involved here, unlike the map in *Atlantic Coast Line R.R. Co. v. Searson*, 137

S.C. 468, 135 S.E. 567 (1926), does not qualify as a muniment of title which under our ancient documents rule is admissible for its content. *Goings v. Mitchell*, 110 S.C. 380, 96 S.E. 612 (1918).